Caldwell *v.* Dickson.

---

CALDWELL, Defendant in Error, *vs.* DICKSON, Plaintiff in Error.

| 17 | 575 |
| 62a | 152 |
| 17 | 575 |
| 87a | 654 |

1. In an action on a note given in advance for the hire of a slave for a fixed period, *it was held,* that the master could not recover any thing, where he had taken the slave away from the defendant without legal cause, before the expiration of the contract term of service.

*Error to Marion Circuit Court.*

*T. Van Swearingen,* for plaintiff in error. The contract of hiring being entire and indivisible, the performance of the entire term of service is a condition precedent to the recovery of the consideration or any part of it. 7 Mo. Rep. 96. 2 Mass. Rep. 147. 13 J. R. 390. 19 ib. 337. 3 J. J. Marsh. 689. *Cutter* v. *Powell,* 6 T. R.

SCOTT, Judge, delivered the opinion of the court.

This was an action on a note for the hire of a female slave for a stated period, payable at the end of the service. Before the expiration of the time for which the slave was hired, the owner unlawfully took her from the possession of the person to whom she was hired. The court below gave judgment against the defendant for a part of the hire, proportioned to the time the slave remained with him.

1. We do not see on what principle in law the action of the plaintiff can be sustained. The law does not permit a man, by his own wrongful act, to apportion his contract. As between lessor and lessee, if the lessee is deprived of any portion of the leasehold, by the act of the lessor, the law discharges him from the payment of the entire rent. The law is equally well settled that, with regard to part performance of an entire contract for labor or service, a refusal or omission to perform the entire labor or service, without any act or consent of the other party, will not entitle the party who has performed, in part, to recover any compensation for the service which has been performed. The entire performance is a condition precedent to the payment of the price, and the courts cannot absolve men from their legal engagements or make contracts for them. 2 Kent, 509.

Caldwell, after insulting the family of Dickson, in the absence of the head of it, by ordering away a servant in their employ, to whose services they were justly entitled, should not be permitted to come into a court of justice, apportion his contract, made necessary by his own wrong, and award to himself the compensation he deems just. Many persons hire slaves in preference to other laborers, because they believe the contract confers an absolute right to their services during its continuation, and that if the owner takes away his slave, without just cause, he will forfeit the hire for the whole period of the contract. The fear of this forfeiture will restrain the master from

improperly interfering with a slave whose services, for the time, he has sold to another. If this restraint is removed, masters will, at any time, violate their contracts when they find it their interest to do so. They may have their slaves fed, clothed and protected during the inclement season of the year, and so soon as their services become valuable, when other laborers cannot be employed, they will take them away from those to whom they were hired. It is no answer to this to say that an action will lie against the master for a violation of his contract. A remote and uncertain liability will rarely restrain men from grasping a present advantage at the sacrifice of right. An ounce of prevention is worth a pound of cure. Justice and policy require, that masters should, only at the risk of forfeiting the entire hire, improperly interfere with slaves whose services they have temporarily parted with. Of course the master should protect his slave against the inhumanity of those to whom he may be hired. For ill-treatment a master ought to interfere, and take his slave from the employment of those who are guilty of such conduct.

The judgment is reversed, Judge Gamble concurring.