## LINDNER, Respondent, v. CAPE BREWERY & ICE COMPANY, Appellant.

**St. Louis Court of Appeals, May 26, 1908.**

1. **MASTER AND SERVANT: Right to Discharge Servant: Refusal of Employee to Comply with Contract.** Where an employee refuses to perform an essential part of the work which he is employed to perform, the employer has a right to discharge him. A superintendent of the bottling department in a brewery forfeited his right to continue in that employment by refusing to do his work and could not justify his refusal on the ground that a subordinate, whom he had dismissed for some trivial offense, had been reinstated by his employer, without being required to promise he would obey the orders of the superintendent.

2. ———: ———: **Contract of Employment: Dependent and Independent Covenants.** The work which an employee has agreed to perform as a substantial part of his employment goes to the entire consideration for his service; the requirement of it is not an independent covenant and failure to perform such work forfeits his contract.

3. ———: ———: **Quantum Meruit.** The rule in this State is that where an employee is discharged for cause or abandons his work before the end of his term of employment, he cannot recover even for the period during which he served.

4. ———: ———: ———: **Periodical Payments.** But where an employee's contract provides for periodical installments of salary or wages, and is discharged for cause or abandons his contract, he may recover that portion of his salary due and unpaid at the time of his discharge or abandonment of his contract.

5. ———: ———: ———: **Construction of Contract by Parties.** And where an employee was to receive a portion of his salary in monthly installments and the remainder in lump sum at the end of the year and was discharged for cause before the end of the year, and his employer tendered him the monthly installments then due and the earned portion of the sum to be paid at the end of the year, this was a construction of the contract by the parties such as to entitle the employee to the full sum earned by him up to the time of his discharge.

Appeal from Cape Girardeau Court of Common Pleas.
—*Hon. Benj. F. Davis,* Judge.

MODIFIED AND AFFIRMED.

*Robert L. Wilson* and *M. A. Dempsey* for appellant.

Plaintiff's action is not upon a *quantum meruit*, but upon the contract, and he is not entitled to recover anything in this cause, unless he has established a wrongful discharge. Bean v. Watkins, 27 Mo. 518. There was no wrongful discharge of plaintiff, but in legal contemplation there was an unjustified abandonment of the contract on his part. (a) Difficulty with a fellow-servant is not ground for abandonment. Aaron v. Moore, 34 Mo. 79; Mullen v. Gilkerson, 19 Vt. 503. (b) It is an implied condition that the servant shall yield obedience to all lawful and reasonable orders, commands or rules established by the master for the conduct of his business, and a failure to do so constitutes a breach of duty. Willful disobedience of such orders is recognized by all the authorities as ground for discharge. McCain v. Desnoyers, 64 Mo. App. 66; Jordan v. Weber M. Co., 77 Mo. App. 572; Stevens v. Crane, 37 Mo. App. 487.

*Charles H. Daues* and *David B. Hays* for respondent.

(1) This is a suit upon a contract and if plaintiff can show that he was wrongfully discharged, he is entitled to recover damages equal to his entire wages. Booge v. Railroad, 33 Mo. 216; Wilcox v. Baer, 85 Mo. App. 594; 2 Parsons on Contracts (6 Ed.), p. 42; 26 Cyc. 1011. (2) Where a master discharges a servant for breach of duty the issuable fact is not whether there was a breach of duty, but whether there was such a breach as constituted reasonable ground for terminating the contract. 26 Cyc. 1005. (3) The only way in which plaintiff's unpleasant relations with other servants are shown to have produced or threatened to produce, effects injurious to the master's business, was

indirectly by the unwarranted interference of the union, and this would not excuse or justify defendant in discharging plaintiff.   Land and G. Co. v. Com. Co., 138 Mo. 445; Swaine v. Blackmore, 75 Mo. App. 74.

GOODE, J.—By a contract entered into January 2, 1905, plaintiff engaged for service in defendant's brewery. The contract was in writing and its terms are clear. Plaintiff agreed to continue in the employ of defendant for two years from the date of the instrument at defendant's brewery in the city of Cape Girardeau, perform therein the duties of brewmaster and act as foreman of the bottling department, diligently serve defendant in such other business as its manager might direct and carry out the directions of said manager in the performance of all services. Other stipulations not material to the present case follow, and then a recital that the contract was made for the purpose of obtaining the exclusive services of plaintiff, his special knowledge, skill and experience and an agreement that he would bind himself not to engage in brewing within said two years except as an employee of defendant. In consideration of those things defendant bound itself to pay plaintiff $3,000 a year as follows: one hundred dollars on the first and sixteenth days of each month during the existence of the contract and $600 on the second days of January, 1906, and 1907. Plaintiff worked under the contract without serious dispute with defendant or its other employees until September 1, 1906, and was paid for his services to that date. He had been somewhat rough in his speech to the employees in the bottling department, but no open rupture between plaintiff and any of them occurred until about September 13th. On said day he observed in said department a few bottles which had been washed but not thoroughly cleansed, as he thought, and spoke about their condition to an employee named Kimmick, who was called the "first man" in the department, at the same

time applying an offensive epithet to Kimmick. The latter said it was impossible to wash the bottles clean and make eighteen barrels of beer a day; meaning the brewing was pushed beyond the capacity of the men. A few words passed and plaintiff told Kimmick to go to the office and get his time; in fact paid him and laid him off from work. This was early in the forenoon, and at the time William G. Coerver, the president and general manager of the brewery, was attending to business elsewhere in the city. The employees of the building belonged to a trade union and at noon they notified the general manager they would all quit work if Kimmick was discharged. It should be stated plaintiff had power to suspend any employee, but final decision as to whether the suspension should stand or not, rested with Coerver. A circus was to come to town the next day and a big sale of beer was expected; some of the beer in the vats needed care to prevent it from spoiling, and a contract had been made between defendant and a brewing concern in Ste. Genevieve, by which a large quantity of beer was to be furnished by defendant during the next few months and it would have to be brewed. These facts made Coerver unwilling to lose the services of either plaintiff or the other employees. According to Coerver plaintiff insisted on his letting the employees go, saying he (plaintiff) could get others in Cape Girardeau, Bellville or St. Louis, to run the brewery. Plaintiff insisted, too, there was so much beer on hand it did not matter if the brewery was idle a while. Coerver reinstated Kimmick and refused to let plaintiff hire a new first man for the bottling department. After these occurrences plaintiff refused to enter said department of the brewery or to act as superintendent of the men there, though he says he was willing to do so if Kimmick would come to him and agree to obey his orders. The testimony of the other witnesses who spoke on this issue was that plaintiff refused absolutely to go about

the bottling department or have anything to do with the men who worked there. We quote enough of plaintiff's testimony to show his attitude according to his own statements:

"I didn't go into the bottling shop any more because if I go in these fellows run me out with the hose.

. . .

"Q. I will ask you if you did not refuse after that —when you said he didn't take your orders—if you didn't refuse to go into the bottling department? A. I told Mr. Coerver he didn't wash the bottles clean any more, and then I fired him, and Mr. Coerver hired him back again, and then I said to Mr. Coerver, 'I am not willing to go into the bottling department any more until Sam Kimmick tells me he will follow my orders; in that case I would be willing to work with him.'"

In rebuttal plaintiff testified as follows:

"Q. Isn't it a fact that you told Mr. Coerver when these men struck, that you—if he would retain that man —wouldn't go down to the bottling department? A. I told Mr. Coerver I would be willing to work down there if Sam Kimmick would obey my orders; but he never came to me; but later on if he would have come back and said: 'I have done you a little wrong,' I would have been willing to work with him."

The substance of plaintiff's testimony is that he refused to go into the bottling department after Kimmick was reinstated, unless the latter would come to him, apologize and agree to obey his orders, and that he (plaintiff) did not again enter said department, though Coerver endeavored to persuade him to do so. The testimony of Coerver agrees with plaintiff's except it shows in detail the efforts of Coerver to induce plaintiff to resume superintendence of the bottling and presents plaintiff's refusal as obstinate and perverse. On Saturday, September 15th, Coerver got the board of directors together and an attempt was then made to

bring about a settlement; but the men persisted in saying they would quit work if Kimmick was not allowed to remain, and plaintiff refused to have anything to do with the bottling department unless Kimmick was dismissed. Finally the directors treated plaintiff's conduct as a refusal to perform part of his contract of service, and on Monday, September 17th, when he returned to the brewery, Coerver offered him a check for $525, telling him the directors had decided to ask for his resignation. Plaintiff refused to resign or take the check and Coerver told him if he would not accept the check he would get nothing. Plaintiff sought an attorney who prepared a letter to Coerver, stating that Lindner had been discharged on Saturday the 15th, and demanding his reinstatement or pay in full as per contract to January 2, 1907. The letter said Lindner was ready and willing to carry out his part of the contract, and if Coerver refused to permit him to serve the company in the capacity of brewmaster and foreman of the bottling department, payment in full would be expected of all damages that might accrue by reason of the company's breach of the contract. This letter was presented to Coerver by plaintiff in person on September 18th, but Coerver declined to take plaintiff back into service; as he had the right to do if plaintiff had been discharged for lawful cause.

This action was instituted to recover $1,400 alleged to be due under the contract; that is to say, $100 every two weeks from September 1st to January 1st, and $600 which would fall due January 2d. The petition states the terms of the contract and alleges plaintiff complied with it in every particular, but defendant failed to comply by discharging him and demanding he leave the premises and not return. The answer admits the execution of the contract, denies plaintiff complied with its provisions, that he served defendant faithfully, that he was discharged, was ready and willing to continue his

work, or offered to do so. A counterclaim was also preferred, based on plaintiff's refusal to perform his duties, and the alleged souring of some yeast and beer for lack of a brewmaster to look after them, and profits lost in consequence of defendant's inability to carry out its contract with the Ste. Genevieve Brewing Company. The items of the counterclaim amount to $2,260. A verdict was returned for plaintiff for $1,400 without a finding on the counterclaim and defendant appealed.

Plaintiff's own version of the events leading up to the cessation of his services, shows he refused to perform an essential part of his contract obligation. He was employed to act as superintendent of the bottling department, as well as brewmaster. Moreover he had bound himself to observe the directions of the manager in and about the performance of his services, and diligently to serve the company. These portions of his undertaking he refused to perform. After Coerver, in the exercise of his unquestioned authority and, as we think, of sound business judgment, had reinstated Kimmick, plaintiff refused to superintend the bottling work or even to go into the room where it was carried on. The testimony is uniform on this point and the only difference between his own and that of the other witnesses is this: they say he insisted on the discharge of Kimmick; he admits he would not go into said department any more, but declared he was willing to resume his duties there if Kimmick would come to him and agree to obey his orders. After Coerver had put the latter to work again, plaintiff had no right under the contract between him and defendant, to exact this submission as the condition on which he would do his own duty. The dispute between him and Kimmick had been of a trivial character and, according to his own statement, about all the offense the latter had given was saying the bottles could not be washed clean while so much beer was brewed. The refusal of plaintiff to

resume his place and duties as superintendent of the bottling department on the repeated requests of Coerver, clearly breached the contract.

It is insisted this breach was not of so serious a nature as to justify plaintiff's dismissal, but we think it was. Plaintiff had obligated himself to superintend the bottling and this was as substantial a part of his employment as was his undertaking to act as brewmaster. It went to the entire consideration to be paid for his services and was meant by both parties to be an essential part of the agreement. Hence it cannot be treated as an independent covenant, for breach of which defendant might seek damages, but could not terminate the employment. [Ritchie v. Atkinson, 10 East. 306; Lake Shore, etc., R. R. v. Richards, 152 Ill. 59; 30 L. R. A. 33 and notes; Springfield Seed Co. v. Walt, 94 Mo. App. 76, 67 S. W. 938.] It is a plain instance of a dependent and indivisible covenant by any criterion laid down in the books. Disobedience of orders by a servant and failure to perform the work for which he was employed, is good ground for his dismissal. [Kramer v. Mack, 8 Mo. App. 531; McCain v. Desnoyers, 64 Mo. App. 66; Jordan v. Moulding Co., 77 Mo. App. 572; Wood, Master & Servant, sec. 119; 26 Cyc. 990, 993.] Plaintiff's conduct was perverse and unreasonable, and deprived the company of one of the main services it had engaged him to render. Hence we hold he was justly dismissed and is not entitled to his salary for the period subsequent to the dismissal.

The question of difficulty arises on his right to recover for the time he had served which had not been paid up to the date of the discharge. The contract was for services to be rendered during the period of two years and was, in this respect, an entirety. The rule of law controlling the right of a party to recover for what he has done under a contract entire in its nature, and not fully performed, is infected with technicalities, dis-

cord and injustice. The courts have long deplored this fact and, in some jurisdictions, have struggled clear of technical rules and established the doctrine that, when a servant is discharged for misconduct, he can recover the value of services rendered prior to the discharge, not exceeding the contract price and diminished by what the master has lost from his wrongdoing. [Wood, Master & Servant, sec. 129; 26 Cyc. 1045, and cases cited in note 48.] In Missouri if one contracts to erect a house and does not finish the job, but proceeds far enough toward performance to benefit the owner, the contractor may recover, *quantum meruit,* the value of his work (Yeats v. Ballentine, 56 Mo. 530) ; but building contracts are treated as exceptions to the general rule. Hardships must arise from applying in a procrustean way the doctrine that no recovery can be had without full performance, to cases of continuous service wherein a partial performance suffices to confer a substantial benefit on the promisee, as well as to cases in which no benefit can be conferred without complete performance. If a man hired by a farmer for the year, remains at work long enough to put in a crop for the employer and then quits, his equity to be paid for his work rests on firmer ground than does, say, the claim of an artist who engages to paint a portrait and throws up the task when it is half finished. A stern rule has been enforced by the courts of this State in cases like the present from the first decision on the question, and employees who were discharged for cause, or abandoned work before the end of their term of employment, have been denied recovery either for the period during which they served, or for the remainder of the term. [Posey v. Garth, 7 Mo. 94; Colwell v. Dickson, 17 Mo. 575; Schnerr v. Lemp, 19 Mo. 40; Hanson v. Hampton, 32 Mo. 408; Lambert v. Hartshorn, 65 Mo. 449; Earp v. Tyler, 73 Mo. 617.] Of those cases Posey v. Garth is exactly in point, as the facts were that Posey, who was

hired for a year by Garth at an annual wage, was dis-charged for misconduct before the year ended, and was paid nothing for his work, which had continued several months. He sued on the contract and was refused re-dress in an opinion which declared the law as it has been followed ever since; namely, if a person enters service for a year for a stipulated wage, performance of the whole contract is a condition precedent to payment and the servant cannot recover if he does not serve throughout the year. If he is discharged without suf-ficient cause before the year expires, he is entitled to wages for the whole year; but if there is any fault or misconduct in him toward his employer sufficient to warrant his dismissal, and, in consequence, he is dismiss-ed, he is not entitled to any wages. This doctrine is main-tained on the ground that to permit a recovery by a ser-vant who is discharged for good cause, or abandons his job without cause, will encourage breaches of contracts. This reasoning is good in instances where the servant wantonly abandons his contract, but may be pushed so far as to become unjust. Various events beyond the servant's control, such as sickness in his family, or a misunderstanding in which he was technically wrong but free from moral turpitude, may cause him to fall short of complete performance.

The frequent inequity of permitting an em-ployer to retain the benefit of work done by a servant while the latter goes unrewarded, has caused courts which accept the doctrine prevailing in this State, to allow an exception when the contract of hiring, though for a definite period and a round sum, provides for payment of the compensation in periodical installments. In such cases, the rule in some jurisdic-tions is that a servant who abandons his contract or is discharged for misconduct, is entitled to be paid any installment of salary or wages which has accrued when his employment ceases. Such installments may be re-

covered as they fall due by separate assumpsits; and, therefore, a technical reason, if no other, underlies the exception. [See note to Cutler v. Powell, 2 Smith's Lead. Cas. (8 Ed.), 42; Walsh v. N. Y. & Ky. Co., 85 N. Y. Supp. 83; Seaburn v. Zachman, 90 N. Y. 1005; Beach v. Mullin, 34 N. J. L. 343; Chamble v. Baker, 95 N. C. 98; Hartman v. Rogers, 69 Calif. 643; Taylor v. Laird, 1 H. & N. 266; Smith, Master & Servant, 113; 26 Cyc. 1043, and cases cited in note 34.] Adopting it as just, and sound in principle, we hold plaintiff, though discharged for cause, was entitled to recover any salary due and unpaid at the date of the discharge.

Counsel for defendant argue no salary was due plaintiff when he was dismissed, as he had been paid the installment which matured September 1, 1906. Another installment of $100 fell due September 16th; but the argument against plaintiff's right to recover it is that he was discharged on September 14th, two days before. We think the evidence is the other way. The dispute between plaintiff and Kimmick culminated on September 14th but the request for plaintiff's resignation, which was the act of dismissal, was not made by the directors until Saturday the 15th, and he remained employed until said date. He was not definitely advised of his dismissal until Monday the 17th, when Coerver notified him of the action of the board and tendered him a check for $525. Hence plaintiff was entitled to recover at least $100 salary.

The more difficult point is his right to a proportionate part of the $600 which fell due January 2, 1907. It will be observed his annual salary of $3,000 was paid in installments of $200 a month throughout the year, amounting to $2,400, and a final installment of $600 at the end of the year on January 2. The contract is silent as to why this arrangement was made. According to the authorities supra which allow a servant who is dismissed or abandons his contract, such installments

of salary as are then due, the servant is not entitled to payment for any period he has worked short of a full installment period. That is to say, if plaintiff had been dismissed on September 10, he would not have been entitled to wages from the first to the tenth, because none fell due until later. [Walsh v. N. Y. & Ky. Co., supra; Elliott v. Miller, 17 N. Y. Supp. 526; Hartman v. Rogers, 69 Cal. 642.] The principle of those cases is, that the mere fact the employee has worked through a fraction of a wage period, is not enough; but a payment must be due and recoverable when he is dismissed. Beyond doubt the installment of January 2, was not due when plaintiff was discharged, and hence does not fall within the exception. But defendant accompanied the discharge with a tender of payment to plaintiff of a proportionate part of the January installment. This offer was not made by way of compromise, but in settlement of what defendant conceded plaintiff was entitled to receive. The amount offered was $525, made up as follows: one semi-monthly installment due September 16th of $100 and $425 of the $600 due in January, distributed over the eight months plaintiff had worked to September 1st and the half month he had worked to September 16th. In other words, the $600 to be paid in January was treated by defendant as made up of a portion ($50) of each month's salary, payment of which was deferred until the end of the year, and not as a distinct payment of which no part was earned until plaintiff had served the full year. Moreover, defendant construed the contract to mean plaintiff did not lose the right to be paid the sum of these deferred earnings by his discharge for cause. This was a practical exposition of the understanding and intention of the parties, and should be respected, as the contract itself does not disclose the reason for providing for the January payment. But the contract shows when this payment accrued, and no act of the parties can construe

away the fact that it did not accrue until January 2d. But the purpose to insist on this, in connection with plaintiff's discharge, as depriving him of the part of the January installment which, in the opinion of the parties, he had earned already, or as postponing his right to be paid such part until January, was not intimated until he had brought suit. The contrary intention as to both matters was shown by defendant. Perhaps it would be consistent with the principles of the law of waiver, to hold defendant had waived what, under its view of the contract, was but a technical defense—the non-maturity of the installment when plaintiff was dismissed. If a party has done an act so inconsistent with the purpose to insist on a right belonging to him as to induce the belief that he would not insist on it, he gives ground to hold the right was waived. [29 Ency. Law (2 Ed.), 1103, and cases cited.] Nor need the waiver be supported always by a consideration, especially if the right is technical rather than substantial. [Griffith v. Gillum, 31 Mo. App. 33; Fulkerson v. Lynn, 64 Mo. App. 649; Fairbanks v. Basket, 98 Mo. App. 73, 71 S. W. 1113.] Whether defendant has waived this defense or not, no controlling precedent dealt with such facts as are before us, in refusing an employee, discharged before the end of his term, payment for past services, and we are unwilling to follow precedents which support the rule, beyond the point in decision. In view of the conceded fact that plaintiff's services were satisfactory until his quarrel with Kimmick, and of defendant's offer of payment, we hold he was entitled to such part of the January installment as he had earned.

The evidence to maintain defendant's counterclaim for loss of profits on beer to be furnished the Ste. Genevieve Brewing Company, is weak and speculative. Perhaps there is evidence tending to establish the claim for damages for yeast and beer lost on account of plain-

tiff's misconduct; but we understand counsel to say they do not wish the cause remanded in order to have the counterclaim determined.     Putting it aside, we hold plaintiff was entitled, on his own evidence, to recover no more than $525.     The judgment will be modified by allowing him that sum, and, as thus modified, will be affirmed.     All concur.