STELLA ADAMS, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

CARY D. CREWS, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

S. E. ADAMS, Administrator of the Estate of DAVID ARTHUR CREWS, Deceased, Respondent, v. MODERN WOODMEN OF AMERICA, Appellant.

**Kansas City Court of Appeals, June 6, 1910.**

1. **APPELLATE PRACTICE: Weight of Evidence: Review: Life Insurance.** Where, in an action on a benefit certificate in a life insurance society, the society claims that false answers were made by the insured in his application for insurance, and the issue as to such falsity is properly submitted to the jury, a verdict for plaintiff, founded on substantial evidence, will not be set aside in the appellate court, even though the verdict was apparent against the weight of the evidence.

2. ———: ———: ———: **Presumption of Innocence.** In the absence of any evidence there is a presumption of right acting on the part of an applicant for insurance, and the defendant in a suit to collect such insurance puts upon the defendant the burden of pleading and proving that the insured's answers in his application were false.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*Benjamin D. Smith, Barbour & McDavid* and *Charles K. Hart* for appellant.

(1) Where, as in this case, the undisputed evidence disclosed that numerous answers in his application for membership were false and untrue, it became the duty of the trial court to direct a verdict for the defendant; and the trial court having refused to so direct the jury, the appellate court, will on appeal, reverse said judgment. Reichenbach v. Ellerbe, 115 Mo. 588; Asphalt Co. v. Transit Co., 102 Mo. App. 476; Fuchs v. St. Louis, 167 Mo. 631; Lavin v. Grand Lodge, 104 Mo. App. 1; Carroll v. Rapid Transit Co., 107 Mo. 653. (2) Where a verdict can be accounted for only on the ground of ignorance, partiality, prejudice, or passion, it will not be permitted to stand. Lang v. Moon, 107 Mo. 334; Caruth v. Richerson, 96 Mo. 186; Avery v. Fitzgerald, 94 Mo. 207; Garrett v. Greenwell, 92 Mo. 120; Spohn v. Railroad Co., 87 Mo. 74; Whitsett v. Ransom, 79 Mo. 258. (3) A verdict based upon conjecture or mere possibility cannot be permitted to stand. Sovereign Camp v. Haller, 24 Ind. App. 108; Sovereign Camp v. Hruby, 96 N. W. 998; Agen v. Metropolitan, etc., Co., 80 N. W. 1020; Leisenberg v. State, 84 N. W. 6; Supreme Lodge v. Fletcher, 29 S. 523; Zearfoss v. Switchmen's Union, 112 N. W. 74. (4) If but one natural and rational inference can be drawn from the undisputed facts, it is the duty of the court to treat the matter in question as one of law and direct the proper verdict. Hardinger v. Modern Brotherhood, 103 N. W. 74; Somerville v. Knights Templar, 11 App. D. C. 417; White v. Insurance Co., 105 N. Y. S. 87; Sovereign Camp v. Hruby, 96 N. W. 998; Clemens v. Royal Neighbors, 103 N. W. 402; Pagett v. Connecticut, etc., Co., 66 N. Y. S. 804; Seybold v. Sovereign Tent, 83 N. Y. S. 149; John v. Northwestern, etc., Assn., 63 N. W. 276. (5) While an appellate court does not interfere with the weight of testimony in law cases, yet it has been

the uniform practice to interfere where no substantial testimony supports the verdict, and this has been done very often where no instructions were asked. Graney v. Railroad, 157 Mo. 680; Lehnick v. Railroad, 118 Mo. App. 616; Hite v. Railroad, 130 Mo. 141; Jackson v. Hardin, 83 Mo. 186; Reichenbach v. Ellerbe, 115 Mo. 588; State to use v. O'Neal, 151 Mo. 89.

*W. P. Cave* and *M. J. Lilly* for respondents.

JOHNSON, J.—The above entitled suits were begun in the circuit court as separate actions, but all are founded on a benefit certificate issued by defendant, a Fraternal Beneficiary Society and before trial were consolidated, by agreement of parties and, afterwards, tried as one case.

January 5, 1906, Willie Thomas Crews made application to become a member of defendant's lodge at Moberly and for a death benefit certificate of $2000. He was duly admitted and on January 29, 1906, the certificate in suit was issued to him. He was twenty-one years old at the time and was unmarried. The beneficiaries named in the certificate were Stella Adams, a sister, and Cary D. Crews and David Arthur Crews, brothers. The application, which was in writing and signed by the applicant, contained a number of questions and answers, among them the following:

"11. Have you ever been rejected by any life insurance company or companies, mutual benefit association or associations, or fraternal beneficiary society or societies?" To which the applicant answered, "No."

"14. Have you within the last seven years been treated by or consulted any physician or physicians in regard to a personal ailment?" Answered. "No."

"15. Are you now of sound body, mind and health and free from disease or injury," etc. Answered, "Yes."

145 App—14

"16. Have you ever sought change of climate or occupation for benefit of health?" Answered, "No."

"18a. Do you abstain entirely from the use of intoxicating liquors?" Answered, "Yes." . . ."f. If you use intoxicants at all, state kind and quantity consumed." Answered, "Use only for medicine."

"33. Have you ever had . . . any of the following named diseases . . . consumption?" Answered, "No." "Spitting blood or other hemorrhage?" Answered, "No."

Since plaintiffs concede in their brief "that the answers contained in the application for insurance are warranties and that the insured is bound by the by-laws of the insurance society in this case," and further admit that defendant is a fraternal beneficiary society authorized to do business in this State, the scope of our inquiry under the contention of defendant that its demurrer to the evidence should have been sustained, is restricted to the question of whether or not we should hold, as a matter of law, that the applicant falsely answered the questions we have quoted. The trial court treated that question as an issue of fact and submitted it to the jury in instructions appropriate to that theory. Counsel for defendant insist that the evidence, considered from any viewpoint, indisputably establishes the falsity of the answers, while counsel for plaintiffs argue that the evidence will support a reasonable inference that the answers were true. In solving this issue, which is simple and closely drawn by the admissions and arguments of counsel, we begin with the presumption of right acting on the part of the applicant and cast the burden on defendant to plead and prove the falsity of the answers which, being warranties, became an integral part of the contract of insurance.

The evidence which defendant says conclusively establishes its defense thus may be stated: The young man died of consumption at Clark, Missouri, November 11, 1907, a year and ten months after he received the

benefit certificate. He was not of sound body at the time he made the application for membership and insurance, but was afflicted with tuberculosis which had attacked one of his lungs. A physician, Dr. Taylor Mangas, testified that in 1903 and 1904, he was practicing his profession at Clark, Mo.; that young Crews who was living there was examined by him and found to be tubercular; that he treated the patient for that disease and finally, on his advice, the patient went to Colorado to seek benefit from a change of climate. After a time, Crews returned and was examined by witness who discovered that the disease had made progress. All of this occurred before Crews applied to defendant for the benefit certificate. Witnesses living in Colorado testified by deposition that Crews came to that State with his brother in the summer of 1905 and lived there; that he stated he was afflicted with consumption and had come in the hope of restoration to health; that he was too weak and run down to work and that he had a hemorrhage there.

This evidence very strongly tended to prove the falsity of the answers to the 14th, 15th, 16th and 33rd questions. Plaintiffs introduced as a witness the mother of young Crews who testified that her son was living at home when he applied to defendant for insurance and that she had "never heard any complaint as to his health." She was cross-examined as follows: "Q. Didn't Dr. Mangas live there at Clark at that time? A. He did live there, but I could not say that he lived there then. Q. He lived there at one time? A. Yes, sir.

"Q. At the time that he lived there, did he examine your son? A. Never examined him that I know of.

"Q. Isn't it a fact that prior to January, 1909, Dr. Taylor Mangas told you that your son was afflicted with consumption? A. I don't remember."

Other witnesses who knew the applicant at Clark testified that he was in good health until a few months

before his death and that he went to Colorado in 1905, not on account of his health, but to find employment. A druggist at Clark by whom Crews had been employed as clerk was a positive witness for plaintiffs on these points. The physician who as medical examiner employed by defendant examined the applicant testified: "I found him in good physical condition, the condition that I passed him in; he got a certificate and a policy and he could not have got it if I turned him down. I found him all right. I could not tell anything about his condition now. I had known Willie Crews ever since I was at Clark.

"Q. I will get you to state from what you knew of the family history and the examination you made whether or not you considered him a good insurance risk at the date of your examination. . . A. I always base my examination on the family history to a great extent; his family history was good; they never called me in as a physician; they would come up and buy something once in awhile and the history of the family was good and I base my examination upon the family history; and this young man, when I examined him, I found him in good condition, my record will show that my death loss is less than five on the thousand. . . . I did not discover any evidence of tuberculosis."

Though we regard the evidence of defendant in its relation to these questions of fact as stronger than that of plaintiffs, we would invade the province of the jury should we declare as a matter of law that the applicant knew at the time that, he was not sound in body but was a consumptive and that he had consulted a physician for that ailment. Finding the evidence substantial on each side of controverted issues of fact, our duty is to let the verdict stand, unless we find that errors of law have been committed in the trial of the case. We have no right to weigh the conflicting substantial evidence nor to render verdicts. The fact that no witness

directly contradicted the testimony of the physician who said he examined the applicant in 1903 and 1904 and found him in the grip of consumption does not compel us to accept the testimony of that witness as conclusive. He is contradicted by facts and circumstances brought out in the testimony of other witnesses and we think his testimony, as well as his credibility, were proper issues for the triers of fact to solve.

Passing to the 18th question, there is some evidence adduced by defendant which tends to show that prior to January, 1906, Crews, on one or two occasions, was seen to take a drink of intoxicating liquor. That he drank it as a beverage is not disclosed and it will be remembered he stated in the application that he used intoxicants only as a medicine. We shall not assume from such unsatisfactory evidence that the question being considered was answered untruthfully, and we hold that defendant had no reason to complain of the treatment of this issue by the trial court. In the seventh instruction given at the request of defendant, the jury were told "that it is not material whether or not the said Willie Thomas Crews was an habitual drinker or ever became intoxicated and if you shall find from the preponderance of the testimony that at any time before the 5th day of January, 1906, the said Willie Thomas Crews drank intoxicating liquors of any kind and in any amount whatever as a beverage then you should find a verdict for the defendant." Thus instructed, the jury found that the intoxicants had not been taken as a beverage and the finding being supported by evidence will not be disturbed.

To disprove the answer to the eleventh question, defendant read in evidence the deposition of the medical director of the life insurance company in New York who testified that in 1905, he examined an application for insurance made by young Crews to his company and on full investigation, rejected the applicant on the ground that he was not a good risk. The written application

purporting to have been signed by the applicant was attached to the deposition as an exhibit. To meet this evidence, counsel elicited the opinion from the druggist who had employed young Crews and who claimed to be familiar with his handwriting that the signature to the application was not his signature. This testimony raised an issue of fact which the court properly decided to submit to the jury. If Crews did not sign the application considered by the medical director, there is no evidence that he applied to that company for insurance and unless he applied, he could not have been rejected within the proper meaning of that term. We conclude that we cannot say as a matter of law that any of the questions under consideration were answered falsely. The demurrer to the evidence was properly overruled.

There are other assignments of error, but the briefs and arguments of counsel are addressed almost entirely to the demurrer. We have examined the other points presented and find no reversible error in the record. We frankly admit that we would find for the defendant were we sitting as triers of fact, but since it appears the verdict is supported by substantial evidence and that a fair trial was accorded defendant, we cannot interfere. Accordingly the judgment is affirmed.

All concur.