CATHERINE ROEDEL, Respondent, v. JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY, Appellant.

St. Louis Court of Appeals, July 16, 1913.

1. **LIFE INSURANCE: Defenses: Misrepresentations: Burden of Proof.** In an action on a life insurance policy, the burden of establishing a defense, that insured misrepresented the condition of his health in his application for the insurance, rests upon insurer.

2. **———: ———: ———: Question for Jury.** Under Sec. 6937, R. S. 1909, a misrepresentation by insured in his application for a life insurance policy, that he was then in good health, does not avoid the policy, unless he was then suffering from an infirmity or disease which actually contributed to his death; and the question of whether it so contributed is to be determined by the jury in every case, and not declared by the court as a matter of law.

3. **———: Evidence: Proofs of Death: Conclusiveness.** A statement in a doctor's certificate contained in the proofs of death, that insured was suffering from the ailment from which he died, at the time he applied for the insurance and represented himself to be in sound health, *held* not conclusive as against the beneficiary.

4. **TRIAL PRACTICE: Conflicting Evidence: Question for Jury.** Where the evidence respecting an issue is conflicting, the question is for the jury.

5. **APPELLATE PRACTICE: Conclusiveness of Verdict.** A verdict based upon conflicting evidence will not be disturbed on appeal.

6. **LIFE INSURANCE: Defenses: Misrepresentations: Instructions.** In an action on a life insurance policy, an instruction that, in order to avoid the policy, any representation in procuring the insurance must not only have been with respect to a matter which contributed to the event on which the policy was to become payable, but must have been made with knowledge of its falsity, was not erroneous.

7. **———: Warranties: Representations.** Answers by insured in his application for a life insurance policy, that he was then in good health, are not warranties but representations, under Sec. 6937, R. S. 1909.

8. **APPELLATE PRACTICE:** Review: Refusal to Give Instructions: Prerequisites. The refusal to give instructions is not reviewable on appeal unless complaint thereof is made in the motion for a new trial.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Leahy, Saunders & Barth* and *Block & Sullivan* for appellant.

(1) The demurrer to the evidence ought to have been sustained. (a) If insured was not in sound health at the date of the policy, and his then condition contributed to cause his death, there could be no recovery. R. S. 1909, sec. 6937; Salts v. Insurance Co., 140 Mo. App. 149; Frazier v. Insurance Co., 161 Mo. App. 709; Welsh v. Insurance Co., 165 Mo. App. 137. (b) Sec. 6937, R. S. 1909, does not destroy the power to sustain a demurrer in cases of this character. Schuerman v. Insurance Co., 165 Mo. 649, 650; Salts v. Insurance Co., 140 Mo. App. 149. (c) The proofs of death are prima-facie evidence against the plaintiff, and the statements thereof were not explained away. Queatham v. Modern Woodmen, 148 Mo. App. 43; Almond v. Modern Woodmen, 133 Mo. App. 387; Insurance Co. v. Newton, 22 Wall. 32. (2) Instructions 1, 3 and 4, given for the plaintiff, were erroneous in requiring that insured must have known of his condition at the time the policy was written to avoid the insurance. So, also, the modification of the instructions asked by the defendant, so as to make them carry the same idea, was error. (a) The statements of the application were warranties. Aloe v. Life Assn., 147 Mo. 574. (b) A warranty must be true as written. McDermott v. Modern Woodmen, 97 Mo. App. 647; Loehner v. Insurance Co., 17 Mo. 255; Aloe v. Life Assn., 147 Mo. 575. (c) Honesty, or belief of the in-

sured as to the truth of a warranty, will not avoid the effect of showing it to have been untrue in point of fact. Digby v. Insurance Co., 3 Mo. App. 603; Holloway v. Insurance Co., 48 Mo. App. 1; Maddox v. Insurance Co., 56 Mo. App. 346; McAndiless v. Insurance Co., 45 Mo. App. 585; Insurance Co. v. Sale, 121 Fed. 667; Fraser v. Insurance Co., 114 Wis. 517; Satterlee v. Benefit Assn., 15 N. D. 99; Breeze v. Insurance Co., 24 N. Y. App. Div. 381. (d) Instructions directing a verdict must not ignore evidence tending to a contrary result. Bell v. Railroad, 125 Mo. App. 677; Kirchner v. Investment Co., 127 Mo. App. 262; Warrington v. Kallaner, 135 Mo. App. 7; Wilks v. Railroad, 159 Mo. App. 727. (3) It was error to give instruction No. 5, for the plaintiff, for there was no evidence to support the hypothesis upon which it was based. Conran v. Fenn, 159 Mo. App. 680; Lukamiski v. Foundries Co., 162 Mo. App. 638; McDonald v. Railroad, 165 Mo. App. 111; Strother v. McFarland, 166 Mo. App. 371. (4) The trial court erred in giving instruction No. 2 for the plaintiff, authorizing the assessment of damages and attorney's fees for vexatious refusal to pay this claim. (a) There was no evidence before the jury to justify a finding that the refusal was vexatious. R. S. 1909, sec. 7068; Blackwell v. Insurance Co., 80 Mo. App. 78. (b) The instruction was not in proper form because it did not define a vexatious refusal, but left it to the jury to interpret the statute and decide what is meant by a vexatious refusal. Gebhardt v. Transit Co., 97 Mo. App. 381; Muldrig v. Railroad, 116 Mo. App. 672; McNamara v. Transit Co., 182 Mo. 681.

*Bland & Cave* and *H. A. Loevy* for respondent.

(1) Appellant's first point is that respondent must show insured was in good health at date of policy, that otherwise she cannot recover. (a) This is not a condition precedent, so that the burden is not *ab initio*

on plaintiff. It is matter of defense, and the burden is on the insurer. Frazer v. Ins. Co., 161 Mo. App. 709; Walsh v. Ins. Co., 165 Mo. App. 233. (b) But even if it was a condition precedent, there was ample and conflicting evidence *pro* and *con* on that point and the jury decided it against appellant. This court will not, in such cases, review the evidence. Vaughn v. Lemp, 152 Mo. App. 56. (c) The statement by Dr. Vitt (a physician unknown to plaintiff) in the proof of death that he had consumption when he made his application, *although he was not his physician at the time and never had, in fact, attended him, is* not conclusive upon her and was fully explained. There was overwhelming evidence that he was in fine health when the policy was issued. Adams v. Woodmen, 145 Mo. App. 214. (2) Instructions 1, 3 and 4 for respondent, to the effect that the insured must have known that his statements as to his condition were false—that is, that he must have made misstatements wilfully before he could be charged with misrepresentation—and the modification of appellant's instructions to so read, were correct. Whitmore v. K. & L. of H., 100 Mo. 46; Eliot v. Ins. Co., 163 Mo., 132; Summers v. Ins. Co., 90 Mo. App. 69; Christian v. Ins. Co., 143 Mo. 460; Aufderheide v. Ins. Co., 66 Mo. App. 285; Callies v. Woodmen, 98 Mo. App. 521, 25 Cyc. 801. The presumption of law is that appellant's medical examiner made a thorough examination and correct report and that any misrepresentation was innocently made. Kern v. Legion of Honor, 167 Mo. 475. (3) Instruction No. 5 for plaintiff is correct. It is a copy of an approved instruction. Shotliff v. Woodmen, 100 Mo. App. 138; McQuillin's Mo. Instr., sec. 1030. (4) Instruction No. 2 for plaintiff authorizing damages and attorney's fee for vexatious refusal to pay her claim was properly given. (a) The jury is the sole judge of whether such refusal was vexatious or not, from the evidence. Keller v. Ins. Co., 198 Mo. 440; Thomp-

son v. Ins. Co., 169 Mo. 28. (b) The instruction is in proper form. It is a copy of an approved form.

ALLEN, J.—This is an action upon a policy of insurance issued by defendant upon the life of one William Roedel, deceased. Plaintiff, to whom the policy was made payable, is the widow of the insured. The cause originated before a justice of the peace, where the plaintiff had judgment, and the defendant appealed to the circuit court.

Two trials have been had in the circuit court, each before the court and a jury; upon the first plaintiff received a verdict at the hands of the jury, which was by the court set aside on the ground that it was against the weight of the evidence; the second resulted in a verdict for plaintiff for the face value of the policy, to-wit, $250, with ten per cent interest and seventy-five dollars as attorneys fees as for a vexatious refusal to pay. Judgment was entered accordingly, from which the defendant has duly appealed to this court.

The application for the policy is dated February 6, 1906, and the policy was issued February 21, 1906. The insured died August 13, 1907. The proofs of death offered in evidence by plaintiff showed that the deceased died of *phthisis pulmonaris,* and the physician's certificate states that, in his opinion, the insured's health was first impaired eighteen months prior thereto. This certificate, however, shows upon its face that the physician who made it had not attended or prescribed for the deceased prior to his last illness, and that he first visited the deceased on March 16, 1906. In the application for insurance the deceased stated that he was in good health; that he had not, within five years prior thereto, had any sickness, disease, etc., and that the last time he had consulted a physician prior thereto was in 1903, for a sprained ankle. The defendant's physician who examined the insured prior to the issuance of the policy certified

that he appeared to be in good health, and that the examiner recommended the applicant, without reservation, as being safely insurable.

It appears that the insured had previously carried a policy of insurance in the defendant company which he had suffered to lapse, and that his desire was to renew the policy, but that he was told by the agent that it would be better to take a new one. The insured was a baseball player, and the evidence discloses that in the latter part of 1905 he came home from Texas, where he had been following this occupation; that upon his return he had a heavy cold and was not feeling well. There is evidence that he recovered from the cold, that his condition improved, and that he appeared to be in good health prior to and at the time of making the application for the insurance and at the time of the issuance of the policy. Such was the testimony of plaintiff and other witnesses in her behalf. There was testimony *contra* on behalf of defendant. The deceased's mother testified that he came home from Texas, in September, 1905, because he was sick; that in November of 1905 he had consumption, had a very bad cough, and hemorrhages from time to time, and night sweats; that he continued to grow weaker until his death.

It appears that plaintiff and deceased lived together after the latter returned from Texas until sometime in February 1906, when it seems that they separated, deceased going to his mother's home. It appears that the mother and this plaintiff were not on good terms; that upon the death of the insured the mother, learning that deceased's life was insured in favor of plaintiff, notified the defendant company to the effect that her son was sick at the time that the policy was issued. She testified that, while the deceased and plaintiff still lived together, and shortly prior to the time that deceased came to live with her, she had a conversation with plaintiff at the latter's

house, in which plaintiff told her that deceased had just been insured, and that plaintiff said that she was very much worried for fear that he would have a coughing spell while the doctor was there examining him. This the plaintiff denied, and her testimony and that of other witnesses was to the effect that the insured appeared to be in good health during the time in question.

We are asked to review the ruling of the lower court on the demurrer to the evidence upon the theory that the evidence conclusively shows that the insured was not in good health at the time that the policy was issued, as he represented himself to be, but that he was then suffering from the very disease which produced his death. But there are reasons why we cannot sustain appellant's contention in this respect. The burden of proof as to this defense was upon the appellant. [See Frazier v. Insurance Co., 161 Mo. App. 709, 141 S. W. 936; Winn v. Modern Woodmen of America, 157 Mo. App. 1, 137 S. W. 292.] And if the insured was not in good health at the date of the issuance of the policy, his statement in the application to the contrary, and the condition of the policy to which this defense relates, regardless of all other questions involved, could operate to avoid the policy only in the event that the insured was then suffering from a disease or bodily infirmity which actually contributed to his death; and whether it so contributed was a question for the jury. [See Sec. 6937, Rev. Stat. 1909; Keller v. Ins. Co., 198 Mo. 440, 95 S. W. 903; Frazier v. Ins. Co., supra; Salts v. Ins. Co., 140 Mo. App. 142, 120 S. W. 714.]

As to the ruling upon the demurrer, learned counsel for appellant contends that the statute above referred to does not destroy or impair the power and duty of a trial court to direct a verdict when the evidence is all one way. And in support of this we are cited to Schuermann v. Ins. Co., 165 Mo. 641, 65 S. W.

723. But an examination of the opinion in that case will readily disclose that it does not in any manner support this contention. We apprehend that the statute means just what it says, and that the question is one for the determination of the jury, and with which the court has no concern. Such is the plain language of the statute, and so our courts have ruled thereupon.

But even were we at liberty to review the lower court's ruling on the demurrer, there is another and altogether sufficient reason why that ruling was eminently correct. This is because the evidence touching the issue as to defendant's state of health at the time the policy was issued was highly conflicting, and the question was, therefore, pre-eminently one for the determination of the jury. It is true that the testimony on behalf of defendant tended to sustain the defense which it sought to make, but on behalf of plaintiff there was much evidence *contra*.

Appellant lays much stress upon the doctor's certificate contained in the proofs of death, and particularly upon that portion thereof wherein it was stated that in the physician's opinion the deceased's, health first became impaired eighteen months prior to his death. As the deceased died on August 13, 1907, and the policy was issued February 21, 1906, a period of eighteen months prior to his death would reach back to February 13, 1906. But this evidence was by no means conclusive against the plaintiff. [See Frazier v. Insurance Co., supra, l. c. 717; Almond v. Woodmen, 133 Mo. App. 382, 113 S. W. 695.] Furthermore, the physician's certificate shows upon its face that he had not attended the insured prior to the issuance of the policy, at which time it appears that the insured was thoroughly examined by appellant's examining physician, who found him in good condition and who unreservedly recommended him as a good risk. The testimony was by no means all one way, and it was the peculiar province of the jury to determine the mat-

ter in hand. With the conflict of testimony on that issue we have nothing to do. "The genius of our law has wisely and quite relieved an appellate court from that burden, at least. We neither hunger nor thirst after, nor assume, power to disturb the finding of twelve men in the box sanctioned by one on the bench on a question of fact on which the testimony ran *pro* and *con*. Theirs (not ours) the duty was to sift and winnow out the true from the false, to believe or disbelieve." [Westervelt v. Transit Co., 222 Mo. l. c. 334, 335, 121 S. W. 114; Vaughn v. Brewing Co., 152 Mo. App. l. c. 56, 132 S. W. 293. See also Keller v. Insurance Co., supra; Adams v. Woodmen, 145 Mo. App. 207, 130 S. W. 113.]

The cause was submitted to the jury on instructions on behalf of plaintiff which required the jury to find that, in order to avoid the policy, any representation on the part of the insured in procuring the insurance must not only have been with respect to a matter which contributed to the contingency or event on which the policy was to become due and payable, but must have been made with knowledge of its falsity. We perceive no error in this. The answers made by the insured in his application were not warranties under our law but representations, and are to be dealt with as such.

We have carefully examined all of the assignments of error with respect to plaintiff's instructions and find the same to be without merit. Error is assigned on account of the refusal of instructions requested by defendant, some of which were given after being modified by the court, but we can take no notice of such alleged errors for the reason that appellant did not complain thereof in its motion for a new trial.

Finding no reversible error in the record, the judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.