MARY K. MARATTA, Respondent, v. CHAS. H. HEER DRY GOODS COMPANY, a corporation, Appellant.

Springfield Court of Appeals, June 17, 1915.

1. **MASTER AND SERVANT: Discharge of Servant: Incompetency: Neglect.** Incompetency or neglect of duty gives a ground of discharge of a servant by the master.

2. ———: ———: **Wages Prior to Discharge Recoverable: Subject to Recoupment.** Plaintiff was engaged for one year by defendants as manager of their dressmaking department, at certain monthly wages. Where defendant was discharged for cause this does not prevent her recovering wages due for the time prior to her discharge. The amount recoverable, however, is subject to recoupment by the master for any damages suffered by him by reason of any neglect, unskillfulness or nonperformances of the services.

3. ———: **Wrongful Discharge of Servant: Burden of Proof.** In an action against a master for the wrongful discharge of a servant before the expiration of the term of employment, the burden is on the master to show that the discharge was for good cause.

4. ———: ———: ———: ———. In such case the burden of proving the contract of employment, entry upon the work and continuance therein until discharged is on the servant.

5. **TRIALS: Directing Verdict: When Peremptory Instruction Properly Refused.** In an action by a servant for wrongful discharge by the master, pleadings and evidence reviewed and a peremptory instruction for defendant considered properly refused.

6. ———: ———: **Evidence in Justification.** Action for wrongful discharge by employer of plaintiff who was employed as

Maratta v. Heer Dry Goods Co.

manager of defendant's dress-making department, defended on the ground that plaintiff was incompetent. Evidence of the reputation of the bad work done by the employee for customers and of the bad reputation for doing unsatisfactory work of department under plaintiff's management is admissible, under the contract in question.

7. ——: ——: **Evidence Admissible.** In such case it is competent to show that complaints were made as to the work done by plaintiff and the department under her management, but details of such conversations should not be given unless inquired into on cross examination.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

*Mann, Todd & Mann* for appellant.

*Patterson & Patterson* and *Watson & Page* for respondent.

STURGIS, J.—This suit is in two counts, one for wages due, and the other for damages for wrongful discharge, based on the following contract entered into between plaintiff, a dressmaker, and defendant, owning and conducting a large dry goods store at Springfield, Missouri: "The party of the first part (plaintiff) hereby agrees to enter into the employ of the party of the second part (defendant), in the capacity of manager of their dressmaking department, such employment to begin March 3, 1913, and to continue for a period of twelve months, during which time she will diligently and faithfully apply herself in the performance of the duties devolving upon her as manager óf the dressmaking department, and in the interest of the Chas. H. Heer D. G. Co. The said second party hereby agrees to pay to the said Mrs. M. K. Maratta the sum of $300 per month during the term of this contract. It is also understood and agreed that the party

of the first part is competent and capable to manage the dressmaking department *successfully* and to the *credit* of the party of the second part.'' (Italics ours).

The petition alleges that pursuant to the terms of the said contract, she entered into the employ of the defendant on the said 3rd day of March, 1913, and continued to perform the duties of said position until, and including the 2nd day of July, 1913, on which said date the defendant, without good cause, discharged plaintiff from its employ, and refused longer to employ her, although plaintiff, at all times therein mentioned, was and now is ready, willing and able to continue in the performance of the duties of said employment and position. The answer consists of a general denial, admits the execution of the contract and that defendant discharged plaintiff, and seeks to justify her discharge on the grounds that the plaintiff was not a successful dressmaker, or competent or capable to manage the dressmaking department of its store successfully or to its credit, and denies that the plaintiff performed the conditions of the contract on her part to be performed, and alleges the fact to be that her work was unskillful and unsatisfactory to its customers, and that her work was not competently performed, but was done in such a bungling, unskillful and unsatisfactory manner that one-third or more of the customers of defendant's store who came to her to have their dressmaking work done were dissatisfied with their work and that their said work was not skillfully or competently done.

The plaintiff at the time of making this contract resided in St. Louis, Missouri, and had had several years experience in conducting a dressmaking establishment. She was recommended to defendant by a large dry goods firm of that city. She came to Springfield and entered on her duties of manager of defendant's dressmaking department on March 3, 1913, the time designated in the contract. There is no question but that plaintiff acted in the capacity of manager of

this department, giving her time and attention thereto, from March 3rd to July 2nd and that defendant discharged her on the grounds stated. The defendant's store was burned on June 9, 1913, and it did not resume business until sometime later, but such interruption in the business is not relied on as being material. The defendant's only claim is that plaintiff was not competent and that her work was not efficiently done according to the requirements of the contract. The defendant paid plaintiff her monthly wages for the months of March, April and May, but not for the month of June. After the controversy arose as to whether plaintiff was competent and was doing her work up to the standard required by the contract, defendant offered to pay her for the months of June and July, as she had commenced on the latter month before her discharge. The defendant says that this offer was not by way of compromise or settlement, though both parties then understood that plaintiff's employment would cease. Plaintiff evidently refused the offer on the theory that by accepting it she might be held to have acquiesced in defendant's right to terminate her employment.

This statement is, we think, sufficient to dispose of the verdict for plaintiff on the first count for her wages for the month of June. The defendant admits that plaintiff continued in its employ during this month and gave her time and attention to her duties as manager of its dressmaking department, but claims that she was not competent and that her work was not, during this or previous months, efficiently done according to the standard of efficiency required by the contract. This, it is claimed, gave defendant a right to discharge plaintiff.

That incompetency or neglect of duty gives a ground for discharge is not questioned. [26 Cyc. 989.] But defendant did not do so and allowed plaintiff to continue in its employ until July 2nd. While the con-

tract in this case provides for a year's employment, it also provides for periodical payments, and in such case a discharge for cause does not prevent the employee from recovering wages due for the time prior to the discharge, "subject to recoupment by the master for any damages suffered by him by reason of any neglect, unskillfulness, or nonperformance of the services." [26 Cyc. 1045 and 1040.] This is the rule in this state. [Linder v. Ice Co., 131 Mo. App. 680, 687, 111 S. W. 600; Sugg v. Blow, 17 Mo. 359; Parks v. Tolman, 113 Mo. App. 14, 19, 87 S. W. 576.] Such reduction of the wages earned is generally treated as a set-off or counterclaim (26 Cyc. 1054), but might more properly be treated as a recoupment. In the present case, while defendant claims that plaintiff was incompetent and did not perform the services as efficiently as the contract required, yet it did accept such services and benefits during the month of June without exercising the right to discharge plaintiff, if any such right existed. The defendant did not seek to reduce the wages sued for by evidence showing any definite loss or damages to it by reason of plaintiff's incompetency or failure to do her work properly. No instruction was asked on this theory. The defendant's theory of defense is that if the proof shows that plaintiff was not competent and did not perform her work with efficiency up to the full measure of the contract, she could recover nothing even for the time defendant accepted her services. This is not the law in this State. The verdict for plaintiff on the first count must, therefore, be sustained.

The second count of the petition is based on the wrongful discharge of plaintiff by defendant. The defendant, although admitting the making of the contract and that plaintiff entered on her employment and continued therein for four months and was then discharged for incompetency then and now asserted by defendant, yet insists that a demurrer should have been

sustained to this count because plaintiff put in no evidence that she was competent or complied with the terms of the contract on her part. The defendant invokes the rule of law: "That he who sues at law for damages for nonperformance must allege and prove his own performance." [Kreitz v. Egelhoff, 231 Mo. 694, 703, 132 S. W. 1124.] This is a correct proposition of law, but we do not agree to defendant's interpretation and application of the same to the facts of this case. Its insistence is that this rule of law requires the plaintiff to show not only that she entered on the employment, gave her time and attention thereto, continued therein for a considerable time, and that such services were accepted by defendant without exercising its right to discharge, if such existed, but that plaintiff is required to further prove her own competency and efficiency in the work performed according to the standard, express or implied, of the contract. It is then argued that, although plaintiff testified that she was ready and willing to continue in the employment and proceed with the work as manager of the dressmaking department, which defendant would not permit, this amounted to no more than an offer to continue with the same incompetency and failure to comply with the contract as before; and that, having once come short in this respect, defendant was not bound to give plaintiff a further trial. The law is well settled, however, that where the employee is in the performance of her duties under a contract of employment and so continues until she is discharged against her will by the master for claimed incompetency or inefficiency in the doing of the work and while protesting against the justness of such claim, the burden of proof is not on the servant to prove her competency and the efficiency of her work as measured by the express or implied terms of the contract, but the burden is on the master to show such incompetency and inefficiency. "Where a servant enters upon his duties and continues until he is dismissed

he need not prove that he performed his services faithfully, as a presumption arises that such is the fact, and the burden of proving a sufficient cause for his discharge is on the master." [26 Cyc. 1006.] In Haxton v. Construction Co., 134 Mo. App. 360, 362, 114 S. W. 577, the law is stated thus: "The rule is, in an action by a servant against his master for wrongful discharge before the expiration of his term of employment that the burden is on the master to show the discharge was for good cause." [Miller v. Boot & Shoe Co., 26 Mo. App. 57; Collins v. Glass, 46 Mo. App. 297; Koenigkraemer v. Mo. Glass Co., 24 Mo. App. 124.] The burden is on the servant to prove the contract of employment, that he entered on the work covered thereby and continued therein until his discharge against his will by the master for alleged incompetency, and then the burden is on the master to prove the servant's incompetency or inefficiency.

Instruction numbered four, given for plaintiff, is in accordance with the law as above expressed. For defendant the jury was instructed that the contract required plaintiff to diligently and faithfully apply herself to the performance of the duties of manager of defendant's dressmaking department and required her to be competent and capable of managing same successfully and to the credit of defendant, and that if she failed so to do, or was not competent and capable as so required to be, then defendant had a right to discharge her and she could not recover damages for so doing.

The defendant insists that, there being no evidence for plaintiff on the point, its evidence showing plaintiff's incompetency and inefficiency is not contradicted and therefore destroys plaintiff's case and a verdict should have been directed for it. This is not correct for two reasons: First, the evidence on this point cannot be said to be uncontradicted. The plaintiff did not categorically say that she had complied

with her contract or was competent and such assertion would have little probative force. She could not well deny the evidence of certain witnesses to the effect that they had seen her work and thought her incompetent and that according to their judgment her work so showed. All her actions and statements in connection with this controversy show that she is, and has been, claiming that she fully complied with her contract. She certainly refused at all times to acquiesce in defendant's claims of her incompetency. When defendant's manager submitted to her a list of some twenty-five customers for whom she had made garments and talked to her of the claimed defects in fitting and style, she denied that such defects existed or that such complaints had been made except in a few instances. She always insisted that her work was all right and denied that customers, except as is usual and ordinary, had made complaints or were dissatisfied with her work. Second, if, as we hold, the burden of proof is on defendant to prove plaintiff's incompetency, then, unless the evidence as to her incompetency is so positive and free from doubt that the court must accept the fact as fully proved, the question is for the jury on defendant's evidence. Whether or not it is believable and sufficient to prove plaintiff's incompetency is a question for the jury. [Glassman v. Harry, 182 Mo. App. 304, 170 S. W. 403; Gannon v. Gaslight Co., 145 Mo. 502, 46 S. W. 968; 47 S. W. 907; Barker v. Pub. Co., 152 Mo. App. 706, 131 S. W. 924; Adams v. Modern Woodmen of America, 145 Mo. App. 207, 130 S. W. 113; Hill v. Dillon, 176 Mo. App. 192, 200, 161 S. W. 881; s. c. 151 Mo. App. 86, 131 S. W. 728.] This exact question was answered in the Gannon case, supra, in which the court held that it is not the province of the trial court, after plaintiff has made out her prima-facie case, to sustain an instruction to the jury to find for defendant, offered at the close of all the testimony, on the ground that defendant's proof is undisputed and

unimpeached and is sufficient to overcome the prima-facie case which the conceded and admitted facts make for plaintiff. There are several cases holding that where the trial court refuses a peremptory instruction, this will be taken by the appellate court as showing that the evidence is of such a character that a jury would have a right to disbelieve it and the appellate court will refuse to interfere with such ruling. [Bank v. Hainline, 67 Mo. App. 483; Hammett & Katter v. Railroad, 128 Mo. App. 1, 4, 106 S. W. 1106.] Moreover, it is here shown that defendant's witnesses on this point were its employees and therefore interested witnesses.

While it may be true that, properly speaking, when the burden. of proof is on plaintiff to make out his case, then such burden of proof never shifts to defendant, though the burden of evidence, or of producing evidence to overcome plaintiff's prima-facie case, does shift to defendant. [Taylor v. Telegraph Co., 181 Mo. App. 288, 168 S. W. 895.] Whether you call it burden of proof or burden of evidence the effect is the same. The plaintiff's incompetency, as justifying defendant's discharge of her, is pleaded by defendant to defeat her claim and must be proved by defendant very much as contributory negligence must be pleaded and proved to defeat an action for personal injuries, and there is no better settled rule of law than that in such cases the burden of proof rests on defendant to prove contributory negligence and that uncontradicted evidence of the same, unless such that the court can declare plaintiff negligent as a matter of law, does not entitle defendant to a peremptory instruction. [Collins v. Glass, 46 Mo. App. l. c. 303; Sugg v. Blow, 17 Mo. l. c. 361; Buesching v. Gaslight Co., 73 Mo. 219, 229; Bluedorn v. Railroad, 108 Mo. 439, 448, 18 S. W. 1103; McNown v. Railroad, 55 Mo. App. 585, 590; Hudson v. Railroad, 101 Mo. 13, 14 S. W. 15.] The defendant was

not, therefore, entitled to a peremptory instruction in its favor.

The court rejected evidence offered by defendant to prove that the reputation of the defendant's dressmaking department and the work done there by plaintiff and under her management was bad and a discredit to the defendant's store among the customers of such dressmaking department and this we think was error. The evidence of this character should not go to plaintiff's general reputation for incompetency or doing inferior work disconnected with the work done by plaintiff under the contract in question, Stone v. Vimont, 7 Mo. App. 277, 279, but should be confined to the work done by plaintiff while in defendant's employ and to the reputation of the work done for customers of defendant's dressmaking department while in charge of the plaintiff. We are led to this conclusion from the nature of plaintiff's employment and the contract made by her. This contract requires that she be "competent and capable to manage the dressmaking department *successfully* and to the *credit* of the party of the second part." (Italics ours). To what extent these requirements would be implied by the mere contract of hiring we need not inquire as they are embodied in this contract. It was certainly to the highest degree important to defendant that the dressmaking department of its business be successful in attracting and retaining customers, and to this end that it be maintained in good repute for efficiency and competency. The requirement of the contract that, so far as this result depended on plaintiff's ability and competency and the kind of work turned out by her, her management be successful and to the credit of defendant, is of the essence of the contract. To the credit of defendant, as here used, means substantially the same as to the good repute of this department of defendant's business and is dependent on the good name and esteem which those dealing with it have and ascribe thereto. It is certainly true that

the management of the dressmaking department of defendant cannot be successful, or to defendant's credit, unless it and the products thereof be maintained in good repute for efficiency and competency. Nothing would be so disastrous to this department of defendant's business as that there go forth among its customers that subtle influence known as reputation for incompetency and inefficiency in the work done and the products turned out under and by reason of plaintiff's management. Plaintiff represented and contracted that she was competent and capable of so managing this business as to prevent this. The reputation of the dressmaking department and its products under plaintiff's management is a test of her competency. Such was, therefore, an issue in the case and the competency of the witnesses to speak on the subject was fully shown.

The fact that as to dress and dresses women are, in the matter of style and whims of fashion, hard to please and past finding out, at least by mere men, is a matter which plaintiff must be held to have known and taken into consideration in making the contract and holding herself out as capable and competent to deal with such problems. It was a condition and not a theory with which she had to deal. It may be true and doubtless is, as suggested by plaintiff, that a dress which so far as the average juryman can judge is faultless and that any objection thereto by the customer is without merit and due to a mere whim, yet to such customer, who knows style and lines, the garment is a "perfect fright." These conditions must be reckoned with by both the owner and manager of a dressmaking department. They are mentioned here to illustrate why the reputation and standing of this department— the ability to please and satisfy customers—while conducted by plaintiff is important and a proper subject of inquiry.

We think it is also competent to show that complaints as to the work done by plaintiff and her department were made by customers—not, however, going into the details of any conversations unless inquired into on cross-examination. It is the fact that complaints were made that becomes important as tending to show plaintiff's incompetency, inasmuch as her ability to so manage the department as to avoid or keep within reasonable bounds complaints of this character is a test of competency. The fact of the complaint being made is within the knowledge of the hearer as well as the person making the complaint and is not objectionable as being purely hearsay. As to the list of dissatisfied customers offered by defendant in evidence, we think defendant received all the benefits it was entitled to by the oral evidence relating thereto. The list contains some improper and hearsay evidence and its rejection was proper.

It results that this cause should be reversed and remanded for new trial on the second count only. The verdict for plaintiff on the first count will stand until a final disposition of the second count, and a judgment then entered by the trial court disposing of the whole case.

*Farrington, J.*, concurs. *Robertson, P. J.*, concurs in affirming the first count, but dissents in reversing and remanding the second count.