B. B. YOST et al., Respondents, v. SETH S. SILVERS, Appellant.

St. Louis Court of Appeals, Submitted April 13, 1909. Opinion Filed May 24, 1909.

1. **APPELLATE PRACTICE: Affidavit for Appeal.** An affidavit for appeal sworn to by the attorney for the appellant which stated that the appellate was aggrieved by the judgment of the court was sufficient without stating that affiant "believed" fhe appellant was aggrieved.

2. **PRACTICE: Construction of Contract.** In an action upon a contract an instruction which identified the contract sued on with the contract given in evidence was not subject to the objection that the court had submitted the construction of the contract to the jury.

3. ————: ————: **Jury Question.** Where a contract for the sale of certain merchandise and other personal property was ambiguous as to the date at which the value of the property should be taken, it was proper to submit that question to the jury as a question of fact.

Appeal from the Scotland Circuit Court.—*Hon. Charles D. Stewart,* Judge.

AFFIRMED.

*Pettingill & Montgomery* for appellant.

There is no patent or latent ambiguity in this contract and it was the duty of the court to construe the contract and say what the parties meant, and it was error to submit the construction to the jury. Mathews v. Danahy, 26 Mo. App. 660; Greason v. Railroad, 112 Mo. App. 116; Mantz v. Maguire, 52 Mo. App. 137;

Fruin v. Railroad, 89 Mo. 397; Chapman v. Railroad, 114 Mo. 542; Soap Works v. Sayers, 55 Mo. App. 15; Thomas v. Insurance Co., 47 Mo. App. 169; Edwards v. Smith, 63 Mo. 119; 23 Am. and Eng. Ency. Law (2 Ed.), p. 554; Loesch v. Casualty & Surety Co., 176 Mo. 654.

*W. F. Fitzgarald* and *J. M. Jayne* for respondents.

STATEMENT.—On the 7th of October, 1907, plaintiffs and defendant entered into a contract, by the terms of which, in consideration of $4,000, to him to be paid, defendant agreed to sell to plaintiffs certain town lots in the town of South Gorin, Scotland county, this State, together with certain described fixtures and personal property then on the lots, as also his business as dealer in lumber, etc., it being further agreed that defendant was to invoice to the plaintiffs his stock of lumber, coal, cement, paint, etc., on hand in the lumber yard defendant was conducting at South Gorin, and that on November 15, 1907, the parties as to the contract, "are to start invoice of said stock; which shall be done by two competent men, one picked by each party. Those doing the invoicing are to be governed by Atlee's Southern Pine Lumber Co., and Radford's price lists and their grading according to associations to which they belong; cement, lime, plaster, plaster of Paris, paint, roofing, building paper, shingles, posts and poles, etc., according to respective wholesale lists on same, which are to include freight to Gorin, if not so specified, on said lists. Any coal on hand to be invoiced as per bills for same. Anything in stock not covered by above mentioned price lists is to be invoiced at present wholesale prices F. O. B. Gorin." Under the agreement plaintiffs were to pay and did pay $1,000 at the time of entering into the agreement, it being stipulated by the parties that on a failure to comply with the terms of the contract by plaintiffs they should forfeit this $1,000, the first payment on the

contract, or, that on a failure on the part of the defendant, he should return the "$1,000 and pay such damages as the parties of the second part may incur." The remainder of the $4,000 was to be paid as soon as the invoice was completed and deed delivered, which, it was stipulated, should be on or before November 22, 1907. The invoicing was to be done by two competent men, one picked by each party. There are other clauses in the contract, but the controversy arises under those parts of the contract quoted above. The invoicing, as it is called, and as the contract was understood by the parties, meant not merely the listing of the articles bargained, but fixing prices and values thereon. More accurately, it meant the appraisement and classification, which, as to the lumber, as before stated, was to be governed as to price and grading, by "Atlee's Southern Pine Lumber Co., and Radford's price lists and their grading according to associations to which they belong." Each party selected an appraiser, as agreed upon, and these appraisers met at Gorin on the 15th of November, ready and prepared to start in with the invoicing, grading and appraisement. Whereupon a controversy arose between plaintiffs and defendant as to what price lists of Atlee's Southern Pine Lumber Company and Radford's price list were to govern. The plaintiffs claimed that the lists showing prices as of date November 15, 1907, were to control; while defendant on his part claimed that the price lists of these concerns, as of the date of the contract, that is to say, October 7, 1907, were to govern, the point of this controversy appearing to be, that between these dates there had been a very material change in prices. As we gather from the testimony there had been a decided fall in prices of lumber between the two dates. At all events the deal between the parties stopped right there, the plaintiffs and defendant being unable to agree on this, to them, very material proposition. It is in evidence that the appraisers were there ready and, as they tes-

tified, able to go on and make the grading, appraisement and invoice, and they testified that they could have done so, and that the sole reason why they did not do so, was the refusal of the defendant to allow them to proceed and adjust prices according to listed prices of November 15th, defendant refusing to abide by those lists and telling plaintiffs that the courts would have to settle it between them. Whereupon plaintiffs demanded the return of their $1,000 and demanded damages and defendant refusing to pay, claiming that plaintiffs themselves were in fault, this suit was instituted in the circuit court of Scotland county, where on a trial before the jury, a verdict for $1,000, with six per cent interest from the time the demand was made and $100 by way of damages awarded plaintiffs, who entered a remittitur as to any interest on the $1,000. Thereupon judgment was entered for plaintiffs for $1,100 and costs. A motion for new trial was filed, overruled, exception duly saved, appeal prayed for and granted defendant, and the case is now here on his appeal.

REYNOLDS, P. J. (after stating the facts).— Respondents, plaintiffs below, challenge the jurisdiction of this court, claiming that no proper affidavit for an appeal had been filed. The affidavit for appeal is in the following form, after proper venue and title of the cause:

"N. M. Pettingill being duly sworn says that he is one of the attorneys for defendant and he says this appeal by defendant is not taken for vexation or delay, but because defendant is aggrieved by the judgment and decision of the court."

It was sworn to before the clerk of the court, and the abstract shows that it was duly filed in court on the 30th of May, 1908, during the term at which the case was tried and the appeal taken. The criticism which respondents make of this affidavit is, that it does not show that Mr. Pettingill is the agent of the defend-

ant, and that instead of stating that affiant "believes" that the defendant is aggrieved by the judgment and decision of the court, states that it is prayed for "because defendant is aggrieved" by the judgment and decision of the court. This is a very hypercritical objection. Instead of the affidavit falling short of the requirements of the statute and merely stating that the affiant believes appellant is aggrieved, it states affirmatively and unequivocally that defendant is aggrieved. Nor is there any point in the proposition that the affiant does not describe himself as agent but as attorney. That as attorney he was acting as agent for defendant is beyond controversy. The objection is without merit.

Turning to the case on its merits, the criticism rests principally on the proposition that the court submitted the construction of the contract as set out in the petition to the jury, instead of construing the contract and declaring the effect of it in law. We have examined the instructions given for plaintiff and defendant and the authorities cited by the parties and cannot agree with this view of it. As we gather it, defendant claims that there was no patent or latent ambiguity in the contract and that it was the duty of the court to construe the contract, and declare its legal effect, and that it was error to submit the construction of the contract to the jury. It is further argued that the instructions given are bad for the reason that they refer to the petition. In support of this last proposition the case of Pandjiris v. Hartman, 196 Mo. 539, is cited. It is true, that in that case, at page 547, Judge VALLIANT says that the instruction there under view was inaccurate in the use of the words "as charged in the petition." "The jury," says the judge, "knew nothing about the petition and should not be referred to it. Instead of referring the jury to the petition for the character of the arrest, the instruction should have informed the jury on that point. The words 'as charged in the petition,' should be omitted from the plaintiff's

second instruction." That does not meet this case, nor does the court there hold that so charging or instructing the jury, is reversible error. It is more a verbal criticism than the determination of a material point. We do not think, however, that the instructions in this case are susceptible of this construction. The contract had been given in evidence and all the court did by its instructions was to identify it with the contract sued on.

While the proposition of counsel, as to the duty of the court to interpret the contract, as a matter of law, is, as a general proposition, correct, it does not meet this case. We have set out the clause of the contract over which the controversy has arisen, and in our opinion, the contract itself was ambiguous as to the date the price lists were to be taken. When that happens, the court may submit to the jury, as a question of fact, which of two or more meanings is to be given to the ambiguous clause. This is what the court did, and all that it did, both by the instructions given at the request of plaintiff and by the instructions given at the instance of defendant. We think this question was properly submitted to the jury, and the jury settled it. It was a question of fact, to be determined in this case largely by the construction the parties themselves by their own acts, as also by the circumstances surrounding the execution of the contract, had put upon it. As in any other case, when the question of fact has been found by the jury, and its finding is supported by substantial evidence, we will not set it aside. Upon consideration of the whole case, we think the verdict and judgment are for the right party and that the trial of the case presents no material error against the right of defendant, warranting the reversing of the judgment. The judgment of the circuit court is affirmed. All concur.