## LAWSON R. BARKER, Respondent, v. LEWIS PUBLISHING COMPANY, Appellant.

### St. Louis Court of Appeals, October 24, 1910.

1. **CONTRACTS: Prize for Securing Largest List of Subscribers: Sufficiency of Evidence.** A publishing company by an advertisement offered a prize to the person securing the largest number of subscribers for its newspaper in rural districts, a prize to the person securing the largest number of subscribers in a town of less than five hundred inhabitants, a prize to the person securing the largest number of subscribers in a town of more than five hundred and less than one thousand inhabitants, and prizes to persons sending the largest number of subscriptions in seven other classes defined in the advertisement. In a suit to recover the prize for the rural district class, evidence *held* to show that plaintiff furnished his proper post-office address, including his rural free delivery route, with the first list of subscribers sent to defendant, thereby indicating that he entered the competition in the rural class.

2. **EVIDENCE: Presumptions: Spoliation of Document.** The spoliation of a paper in defendant's possession by tearing off a part of it raises the presumption that the part torn off contained evidence unfavorable to defendant.

3. **CONTRACTS: Prize for Securing Largest List of Subscribers: Pleading: Petition Construed.** In an action to recover a prize offered by defendant publishing company for the largest number of subscriptions sent to it, the petition alleged that defendant agreed to pay plaintiff a certain sum as a prize if he procured the largest number of bona fide subscribers between the time the contest began and the issue of the first number of defendant's newspaper, provided plaintiff collected and remitted the proper amount for all subscriptions by depositing the same, postage prepaid, in the United States mail, properly addressed to defendant, before midnight of December 15, 1906, and that plaintiff procured a greater number of subscribers than any other agent prior to the first issue of the paper, which was on or about November 15, 1906, and that he remitted therefor before midnight of December 15, 1906. *Held,* that the petition did not allege a contract to send in all subscriptions by November 15, but alleged that the subscriptions were to be sent in before the first issue of the paper; the statement that the first issue was about November 15, being a mere recital of a fact.

Barker v. Publishing Co.

4. ———: ———: **Sufficiency of Evidence.** In an action on a contract to give a prize to the person procuring the largest number of subscriptions for defendant's newspaper prior to its first issue, evidence *held* to show that the first issue of the paper was in the latter part of November, 1906, and not on the first day of that month; *held further*, that the evidence tended to show plaintiff furnished his list of subscribers prior to the first issue of defendant's newspaper.

5. ———: ———: **Performance of Service: Estoppel to Deny.** A publishing company advertised to pay a prize to the person procuring the largest number of subscribers for its newspaper prior to the first issue thereof, provided such person remitted for such subscribers by depositing the amount thereof in the United States mail, properly addressed to the publishing company, postage prepaid, before midnight of December 15, 1906. In an action to recover the prize, the testimony showed that plaintiff's last remittance for subscriptions was by postal money order, which he deposited in the United States mail, properly addressed to defendant, postage prepaid, about 6 p. m., on December 15, 1905, and that defendant received the remittance in due time but returned it for further instructions, after which plaintiff returned it to defendant, who entered it to plaintiff's credit. *Held*, that plaintiff complied with the requirements of the advertisement as to the time of making the subscription remittances, and that defendant, by accepting and retaining the remittance, was estopped from denying plaintiff credit therefor as of the date of December 15th.

6. ———: ———: **Corporations: Advertisement of President Binding: Evidence.** In an action to recover a prize offered by a publishing company for the highest number of subscriptions secured within a certain time for its newspaper, the recitals in an article published in defendant's newspaper over the signature of its president and editor, relating to the very subject-matter in controversy, are authoritative for the prima facie purposes of the case.

7. **APPELLATE PRACTICE: Evidence: Witnesses: Credibility of Witnesses for Jury.** The credibility of witnesses and the weight of their evidence are for the jury in the trial court.

8. **WITNESSES: Evidence: Credibility of Witnesses for Jury: Uncontradicted Testimony.** The mere face that a witness' testimony is uncontradicted does not relieve it from the rule authorizing the jury to give judgment on its weight and credibility.

9. **CONTRACTS: Prize for Securing Largest List of Subscribers: Evidence: Receipts and Letters: Right of Jury to Pass Upon.** Where an instrument in evidence is not dispositive but is

merely offered for the purpose of showing an extrinsic fact, it is for the jury to say what inferences of fact it affords, and the court may not declare the result as a matter of law; so that in an action to recover a prize offered by a publisher for the largest number of subscriptions for its newspaper secured within a certain time, receipts and letters, tending to prove that another person had secured a larger number of subscriptions, within the terms of the contract, than plaintiff, were not such documentary evidence as to be accepted and declared as a matter of law, precluding the right of the jury to reject them.

10. ——: ——: Pleading: General Denial: Issues. In an action to recover a prize offered by defendant publishing company to the person who procured the greatest number of subscriptions for its paper within a certain time, defendant could show under a general denial that another person had furnished more subscriptions than plaintiff.

11. ——: ——: Evidence: Hearsay. In an action to recover a prize offered by defendant publishing company to the agent who should procure the greatest number of subscriptions for its paper within a certain time, testimony by defendant's treasurer, that another also claimed the prize was properly excluded as hearsay, such other claim not being made in plaintiff's presence.

12. ——: ——: ——: Res Gestae. In an action to recover a prize offered by defendant publishing company for the largest number of subscriptions to its paper procured by an agent, testimony by defendant's treasurer that another, after the contest was closed. claimed the prize, was not admissible as *res gestae*, being merely the narrative of a past occurrence.

13. ——: ——: Instructions: Referring Written Contract to Jury: Harmless Error. In an action on an agreement to give a prize to the one procuring the largest number of subscriptions for a paper to be published by defendant publishing company, error in requiring the jury to find that plaintiff fully complied with the rules governing the contest, as stated in the advertisement, because it submitted the written contract for the jury's construction, could not have harmed defendant, inasmuch as the instruction set out all the substantive facts essential to plaintiff's recovery, and required them to be found.

14. INSTRUCTIONS: Surplusage: Harmless Error. Where an instruction requires a finding on all of the essential facts, the mere superfluous reference to the petition or to a contract counted upon is unimportant.

Appeal from St. Louis County Circuit Court.—*Hon. John W. McElhinney*, Judge.

AFFIRMED.

*Barclay, Fauntleroy & Cullen* for appellant.

(1) The plaintiff declares upon a contract whereby defendant agreed to pay $1000 to the person who sent in the greatest number of subscribers before November 15th, and remitted for same prior to December 15th. The only contract proved required that subscriptions be obtained before November 1st and paid for within thirty days thereafter, and plaintiff sued upon one cause of action and was allowed to recover on another. For this complete failure of proof the judgment of the lower court should be reversed. Green v. Cole, 127 Mo. 598; Clements v. Yeates, 69 Mo. 625; Cole v. Armour, 154 Mo. 351; Laclede Co. v. Iron Works, 169 Mo. 154; Faulkner v. Faulkner, 73 Mo. 327; Halpin Co. v. School District, 54 Mo. App. 376; Feurth v. Anderson, 87 Mo. 353; Heman v. Glann, 129 Mo. 325; Wilkerson v. Farnham, 82 Mo. 677. (2) The printed articles in the *Woman's National Daily* are wholly insufficient to establish any change in the terms of the contract touching the contest. Such printed articles appearing long after the close of the contest are narrations relating to past events, and there is not a scintilla of evidence tending to prove that the person who inserted them had such power or authority as would authorize him to make or change the contract of the corporation. Spurlock v. Railroad, 125 Mo. 404; Barre v. Council Bluffs Ins. Co. (Iowa), 41 N. W. 373; Gold Mine Co. v. Fraser (Colo.), 29 Pac. 667; Hollis v. State Ins. Co., 65 Iowa 456, 21 N. W. 774; Miner v. Edison Co., 50 N. Y. Supp. 218. (3) The court will look into the nature of the instrument itself, the surrounding circumstances, the situation of the parties, and the

subject-matter of the contract, and read into said contract such conditions as the extrinsic circumstances clearly imply. One of the conditions necessarily implied is that plaintiff upon entering the contest should have notified the defendant to what class he belonged. State ex rel. v. Town of Richmond, 20 Wis. 302; Laclede Construction Co. v. Moss Tie Co., 185 Mo. 25; Williams v. Railroad, 153 Mo. 534; Dobbins v. Edmunds, 18 Mo. App. 307; Price v. Evans, 26 Mo. 30; Shuey v. U. S., 92 U. S. 73; Amis v. Conner, 43 Ark. 337; Williams v. Railroad, 191 Ill. 610; Jones v. Bank, 8 N. Y. 228; Franklin v. Heiser, 6 Blachtf. (U. S.) 426; Howland v. Lounds, 51 N. Y. 604, 10 Am. Rep. 654; Arnold v. Cason, 95 Mo. App. 440; Easterly v. Criswell, 58 Mo. App. 471; Brewington v. Mesker, 51 Mo. App. 348; Embry v. Hargadine, 127 Mo. App. 383; Goss v. Lumber Co., 115 Mo. App. 214. (4) The evidence in this case shows clearly that plaintiff did not have the greatest number of subscribers of any agent in his class. The substantive facts on this issue are undisputed, and reasonable men can draw only one inference from the facts proved, and whether or not this verdict stands resolves itself into a question of law. The lower court should have sustained defendant's demurrer, and this court should reverse the case because there is no evidence to sustain the verdict. Knorpp v. Waggener, 195 Mo. 662; Summerville v. Stockton, 178 Mo. 12. (5) The instruction given by the court on plaintiff's motion is erroneous, because it fails to define the issues, and refers the jury to the advertisement to ascertain the issues. Fleischman v. Miller, 38 Mo. App. 181; Margrave v. Railroad, 183 Mo. 119; Dassler v. Wisley, 32 Mo. 59. (6) The instruction tendered by the plaintiff and given by the court is erroneous, because under it the jury were given authority to interpret the rules. It was the duty of the court to interpret the written and printed rules, and to tell the jury what was the meaning of the contract. Loesch v. Casualty Co., 176 Mo. 668; State

v. Brown, 171 Mo. 487; Gleason v. Railroad, 112 Mo. App. 129.

*Chas. J. Harrison* and *Henry Higginbotham* for respondent.

(1) Where plaintiff's testimony is sufficient to make a prima facie case, then although the testimony in favor of the defendant is all one way, and although the plaintiff offers nothing to contradict that presented by defendant, still the credibility of such testimony is for the jury and not for the court. Bryan v. Wear, 4 Mo. 106; Wolff v. Campbell, 110 Mo. 114; Gordon v. Burris, 141 Mo. 602; Seehorn v. Bank, 148 Mo. 256; Ford v. Dyer, 148 Mo. 528;. Gannon v. Laclede Gas Light Co., 145 Mo. 502; Vincent v. Means, 184 Mo. 327; Newry v. Norman, 204 Mo. 173; Hunter v. Wethington, 205 Mo. 284; Davidson v. Transit Co., 211 Mo. 320; Porter v. Stockyards Co., 213 Mo. 372; City of Poplar Bluff v. Hill, 92 Mo. App. 17; Kingsbury v. Joseph, 94 Mo. App. 298; Hugumin v. Hinds, 97 Mo. App. 346; Dodd v. Giseffi, 100 Mo. App. 311; Chinn v. Railroad, 100 Mo. App. 576; Holland v. Railroad, 105 Mo. App. 117; Whitson v. Bank, 105 Mo. App. 605; Dawson v. Wombles, 111 Mo. App. 532; Bank v. Hammond, 124 Mo. App. 177; Thompson on Trials, sec. 1037. (2) Failure of a party to produce documentary evidence within his control warrants an inference that the documents, if produced, would be against him. Shields v. Hobart, 172 Mo. 491; McCue v. Stumpf, 180 Mo. 673; Mason v. Perkins, 180 Mo. 702; Bank v. Nichols, 202 Mo. 309; Connecticut, etc., Ins. Co. v. Smith, 117 Mo. 261; Pomroy v. Benton, 77 Mo. 64; Mosby v. Commission Co., 91 Mo. App. 500; 1 Moore on Facts, secs. 123, 581 et seq. (3) Nelson's claiming prize was not part of *res gestae*. It was a mere narration of a past occurrence and self-serving declaration, not concommitant with the principal act. 1 Greenleaf on Ev. (Lewis Ed.),

secs. 108, 110; State v. Rider, 90 Mo. 54, 62; State v. Day, 100 Mo. 242. (4 ) An instruction which sets out all the facts necessary to entitle the plaintiff to recover is sufficient, even though it may add the words, "as stated in the petition,", or other similar expressions. Hartpence v. Rogers, 143 Mo. 623; Lackland v. Railroad, 101 Mo. App. 420; Yost v. Silvers, 138 Mo. App. 524; Brown v. Railroad, 104 Mo. App. 691.

NORTONI, J.—This is a suit on a contract for a prize. Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is a farmer and resides in Illinois near the small town of Versailles. Defendant is an incorporated company engaged in the publishing business in the city of St. Louis. About the first of the year 1906, or the latter part of 1905, defendant conceived the plan of launching a new publication, known as the *Woman's National Daily*, and announced the fact by advertisement in several of its publications. In such advertisements defendant said it proposed to commence the publication of the *Woman's National Daily* within a few months, as soon as its presses and other equipment could be obtained, and that it desired to procure one million subscribers therefor in advance of the first issue of the paper. The proposed *Woman's National Daily* was to be issued to subscribers at the rate of one dollar per year, consisting of 313 issues annually, or a paper daily except Sundays. This advertisement solicited agents for the purpose of procuring subscriptions for the newspaper at one dollar per year and offered twenty-five per cent commission on each and every paid up subscriber obtained. Besides the commission of twenty-five per cent on each paid up subscription, defendant offered as well $10,000 in special prizes to the ten agents who procured the largest number of subscribers in each of ten separate classes therein indicated. The ten separate classes, under each of which a $1000 prize would

be awarded to the agent securing the largest number of paid up subscriptions in accordance with the rules of the contest, were clearly set forth in the advertisement. Under class 1 an offer of $1000 in cash was made to the agent in a rural district outside of a town or city who should send the greatest number of subscriptions to defendant prior to the issue of the first regular number of the *Woman's National Daily*. Under Class 2, $1000 was offered to the agent in a town of less than 500 inhabitants who should send to defendant the greatest number of subscriptions before the first issue of the *Woman's National Daily*. Under Class 3, an offer of $1000 was made to the agent in a town of less than 1000 and more than 500 inhabitants who should send defendant the greatest number of subscriptions prior to the first issue of the *Woman's National Daily*. It is unnecessary to set forth the substance of the remaining seven classes, under each of which a $1000 prize was offered to the several agents who should obtain the largest number of subscribers, as they are unimportant to a disposition of the case.

Certain rules, under which the contest was to be conducted and by which it was to be controlled, were promulgated at the same time in such advertisement. Among these, it was stipulated the subscriptions should be forwarded on blanks furnished by defendant on request; that such subscriptions should be straight and *bona fide,* in that each should represent a genuine subscriber. By another provision therein, each agent was required to send his name and complete postoffice address with the first list of subscribers on the blank. While the original proposition contained in defendant's advertisement required the agents to procure the number of subscribers relied upon prior to the first issue of the paper, it did not require payment therefor in advance of such publication; on the contrary it expressly stated that it was not necessary for the subscribers or agents to pay for the paper in advance of the publica-

tion, unless they wished to do so.    But defendant promulgated a rule by subsequent advertisement, which required all subscriptions to be paid for by depositing the remittance therefor in the United States mail before midnight on December 15, 1906, properly addressed to defendant at St. Louis, with postage prepaid. The sum and substance of the entire proposition, after amendment by the subsequent rule referred to, was to the effect that a $1000 prize or commission extra to the twenty-five per cent commission on subscriptions would be awarded to the agent in each class who procured the largest number of *bona fide* subscribers and furnished a list of the same to defendant before the first issue of the *Woman's National Daily* and collected the subscription price and deposited the same in the United States mail, addressed to defendant with postage prepaid before midnight of December 15, 1906.

Plaintiff, having read defendant's advertisement and rules therein set forth, entered the contest to the end of acquiring the prize stipulated for under the first class; that is, the prize proposed to be awarded to the successful agent in a rural district, outside of any town or city.   In the early part of the year 1906, he forwarded to defendant, on its printed blank furnished him by it for that purpose, a list of subscribers.   It is conceded this list of subscribers contained plaintiff's postoffice address as Versailles, Illinois, and the evidence for plaintiff tends to prove that it contained as well the number of his rural mail route, thus indicating him to be a contestant in a rural district outside of any town or city.   For defendant, the evidence tends to prove plaintiff's first list of subscribers contained no other directions as to his postoffice address than that of Versailles, Illinois, without suggesting the rural route.   It sufficiently appears that plaintiff furnished defendant with different lists of subscribers prior to the date of the first issue of the *Woman's National Daily* to the number of one hundred and fifteen and that he collected from

such subscribers and remitted to defendant the full amount of each subscription, less his commissions of twenty-five per cent, before midnight on December 15, 1906. After the contest was closed, it appears defendant awarded the prize in the first class to one, Bachman, an agent in the state of Pennsylvania, who had procured and furnished ninety-two paid-up subscriptions in accordance with the rules. Adams, another agent in the same state, laid claim to the same prize, however, and the fact that there was a controversy between these two agents with respect to the matter was published December 22, 1906 in defendant's paper. Upon reading of this controversy and before the prize money was actually paid, plaintiff interposed his claim to the effect that he had furnished one hundred and fifteen paid-up subscriptions in accordance with the rules and was entitled to the award over either Bachman or Adams. Some negotiations were had between defendant and the two Pennsylvania agents, Bachman and Adams, and the matter was finally disposed of by dividing the prize between those two agents, defendant insisting that plaintiff was not entitled to the prize for the reason he had omitted to inform defendant of the class in which he chose to contest.

Defendant's correspondence on this question in the record goes to show that after thorough investigation and careful consideration plaintiff's claims to the prize were rejected by defendant for the reason he had omitted to signify his purpose to contest for the prize offered under Class 1 to the agent procuring the greatest number of subscribers in a rural district outside of a town or city. In other words, defendant asserted that plaintiff was not entitled to the prize proposed for rural agents for the reason he had furnished his address as Versailles, Illinois, only, which was a town of more than 500 and less than 1000 inhabitants and as such falling under the third classification of agents instead of the first. Defendant said its advertisement and rules re-

quired each competitive agent to give his name and complete postoffice address and that this was the only information it had with respect to classifying the several agents; that plaintiff, by omitting from his first list of subscribers on the printed blank the number of his rural route, thereby authorized it to classify him as an agent competing in the third class under which fell the town of Versailles, indicated on the blank as his postoffice. Whether plaintiff furnished defendant full information as to his rural route on his first list of subscribers was the paramount issue in the case and there is substantial evidence pro and con on the question. Plaintiff resided on a farm six miles from the city of Versailles. His postoffice address, as appears in the record, during the period involved, was Versailles, Brown county, Illinois; at one time Rural Route No. 1 and at another Rural Route No. 3. It appears the number of his rural route was changed by the postoffice department during the period of the contest. That defendant knew plaintiff's postoffice address was Versailles, Illinois and the rural routes referred to is beyond question, for there appears in the record thirteen separate exhibits bearing such directions. Some of these exhibits are letters written by plaintiff to defendant during the period involved which gave his address as Versailles, Illinois, Rural Route No. 1, or Rural Route No. 3, as the case may be, and others are letters from defendant to plaintiff pertaining to his work as a competitive agent, properly addressed to him at Versailles, Illinois; some on Rural Route No. 1 and some on Rural Route No. 3. But the precise question in issue at the trial as to this matter was whether or not plaintiff furnished defendant with the number of his rural route with the first list of subscribers. It is urged here the evidence is insufficient to sustain the finding of the jury that plaintiff furnished defendant with his complete postoffice address with his first list of subscribers so as to indicate him an agent in a rural dis-

trict. The testimony of plaintiff himself on this question tends to prove that he wrote his name, his post-office, Versailles, Illinois, and the number of his rural route in the proper space provided therefor on the top of the blank furnished by defendant for the first list of subscribers. Besides, the original paper containing the first list of subscribers, which had been in possession of defendant during all of the time, was introduced in evidence and it revealed the fact that all of that portion of the same wherein was provided blanks for the name of the agent, and postoffice address had been torn off and destroyed. Plaintiff's name and the words, Versailles, Illinois, seem to have been affixed to the bottom of this paper but plaintiff testified positively he did not sign his name there or write the words, Versailles, Illinois, beneath it. He denounced his purported signature and the words, "Versailles, Illinois," as forgeries in so far as he was concerned and insisted that he had properly written his name and given his postoffice address in that portion of the blank above the list of the names which was provided for the purpose and which appears to have been dissevered from the list itself before it was introduced in evidence. Furthermore, no one gave evidence tending to prove that plaintiff's name appearing on the bottom of the list mentioned was his genuine signature.

We entertain no doubt whatever as to the sufficiency of the evidence to support the finding of the jury to the effect that plaintiff furnished his proper postoffice address with the first list of names. Besides his testimony tending to prove the fact, the apparent spoliation, by some one, of the original paper, which is conceded to have been in defendant's possession during all of the time, affords a valid presumption that before the heading thereof was dissevered it contained evidence unfavorable to defendant on the issue involved. [Lawson's Presumptive Evidence, p. 183.]

The petition counts on a contract as hereinabove indicated. Among other things, it avers that through the advertisement referred to defendant invited plaintiff and others to become its agents and participate in the contest for the several prizes mentioned; that besides offering a commission of twenty-five per cent on each subscription collected, in order to induce and stimulate its agents in their efforts, it proposed to pay each agent securing the highest number of *bona fide* subscribers in the several classes a $1000 prize or extra commission; sets forth the several classes, etc., and offers therein contained and avers that plaintiff accepted the offer, furnished defendant with his complete postoffice address and entered the contest in a rural district outside of any town or city under the classification contained in the first class mentioned. It avers, substantially, that by the terms of the contract defendant undertook to pay plaintiff $1000 as a prize or extra commission if he procured a larger number of *bona fide* subscribers for the proposed publication between the time when the contest began and the issue of the first number of the *Woman's National Daily*, provided plaintiff collected and remitted the proper amounts for all of such subscriptions by depositing the same, postage prepaid, in the United States mail, properly addressed to defendant, before midnight of December 15, 1906; that plaintiff procured a greater number of subscribers than any other agent in a rural district outside of any town or city prior to the first issue of said publication, which was on or about the 15th day of November, 1906, and in due time, before midnight of December 15, 1906, made proper remittance therefor, etc. It is urged that the evidence for plaintiff does not sustain the contract set forth in the petition in that it fails to disclose plaintiff sent to defendant all of his subscriptions prior to November 15, 1906, and failed to pay defendant in full therefor on or before midnight of December 15, 1906. Of the first suggestion, it may be said that the petition

does not aver a contract for sending in all subscriptions by November 15, 1906. The contract set forth in the petition is in full accord with the proposition contained in the advertisement. The offer contained in the advertisement required all subscriptions to be forwarded to defendant before the first issue of the*Woman's National Daily*. This term of the contract is specifically set forth in the petition but it is said therein that the first issue of the publication was made about November 15, 1906. This is not the averment of a term of the contract but the mere recital of a fact. Defendant urges the evidence is conclusive to the effect the first issue of the paper was on November 1, 1906, but the record fails to support this argument. The president of defendant corporation gave testimony that the first publication was issued in November, without designating any particular day. Another witness said the first issue was in November or December. A copy of the newspaper itself in evidence indicates conclusively that the first issue of the *Woman's National Daily* was made in the latter part of November, 1906. There is not a word in proof so far as we have been able to ascertain fixing the date of the first issue of the paper on November 1, but, on the contrary, the evidence is quite conclusive the first issue was made in the latter part of November. All of the evidence tends to prove plaintiff furnished his list of subscribers relied upon prior to the first issue of the *Woman's National Daily*.

As to the second suggestion that plaintiff failed to pay defendant all of the sums due it before midnight of December 15, 1906, it may be said that the rule or contract only required plaintiff to deposit the amount in the United States mail, properly addressed to defendant and with postage prepaid. The last payment made by plaintiff was in amount $29.50. The postmaster at Versailles, Illinois gave testimony to the effect that plaintiff made this remittance by postal money order about six o'clock on the evening of December 15, 1906;

that he saw the same properly stamped and deposited in the mail addressed to defendant. It appears, too, that defendant received this remittance in due time but returned it to plaintiff a few days later for some further instructions. Plaintiff immediately returned the remittance to defendant and defendant entered the same to his credit. There can be no doubt that this fully complied with the terms of the contract, for the remittance was in a proper amount to cover subscriptions theretofore received in due time and it was deposited in the mail in due time as the rule required. By accepting and retaining the amount, defendant is estopped from denying plaintiff credit as of date December 15th, for he had fully performed the entire measure of his obligation in that behalf by depositing the correct amount in the mail, properly stamped and addressed, within the time specified.

It is next urged plaintiff's case must fail for the reason he omitted to prove the contract as laid in the petition in that there is no direct evidence to the effect that it was competent to make the remittances prior to midnight of December 15, 1906. It is true the petition avers that defendant promulgated a rule subsequent to its original advertisement authorizing payment for subscriptions to be deposited in the mail before midnight of the date referred to. In this connection it should be recalled that in the original advertisement it was expressly stated that payment of the subscription price need not be made prior to the issue of the newspaper. The time when such payment should be made or after which none would be accepted as within the rules of the contest, it is averred, was prescribed by a subsequent rule. It is true enough that this rule itself was not introduced in proof, but there is an abundance of evidence in the record from which the jury might find the fact. Indeed, the entire case was tried on the theory that such was the time prescribed for remittances. Several documents in evidence refer to the fact as though remittances

should be made prior to midnight on December 15, 1906, and were in time if so made by depositing in the mail properly stamped and addressed to defendant within those hours. No one even so much as suggested otherwise with respect of this matter. An article in evidence carried in defendant's publication, the *Woman's National Daily,* of December 22, 1906, and purporting to speak authoritatively for defendant on this very question, recites, substantially, that remittances so deposited in the mails before midnight December 15 of that year were competent to be considered in the award. This article purports to review the whole contest and presents defendant's findings with respect to who were the winners of the several prizes except one which it stated was not yet determined. It further recites that it was barely possible some remittances mailed prior to midnight of December 15th may yet arrive and therefore alter the list but it is reasonably safe to say that the agents whose names we give above are the successful ones. The article referred to purports to be signed by the president of the defendant company and editor of the *Woman's National Daily.* As it was carried in defendant's publication over the signature of its president and editor and relates to the very subject-matter in controversy, there can be no doubt that it is authoritative for the prima facie purposes of the case. No one sought to deny its authority on the trial and it appears that defendant's president and editor was present and testified therein. The record abounds with competent evidence tending to prove the particular term of the contract authorizing remittances to be made before midnight of December 15, 1906, as laid in the petition, and no one gainsaid the fact. We believe the several objections made as to the sufficiency of the proof for the prima facie purposes of the case to be highly technical and without merit.

One, Nelson, a resident of a rural district in the parish of East Carrol, Louisiana, gave testimony for defendant to the effect substantially that he too was a competitor for the identical prize involved here, as he had accepted the terms of defendant's offer and proceeded to solicit subscriptions thereunder; that he furnished defendant with one hundred and twenty *bona fide* subscribers prior to the first issue of the newspaper and remitted the full amount due therefor prior to midnight of December 15, 1906. It is now argued that as Nelson's testimony was not contradicted the verdict should have been for defendant; that it appeared therefrom he had furnished one hundred and twenty subscriptions and fully complied with the rules, whereas plaintiff had furnished one hundred and fifteen subscriptions only. It is sufficient to say of this that the matter of the credibility of the witnesses and the weight and value of their testimony is one for the jury. The jury were pointedly directed by instructions to give a verdict for defendant if they found that Nelson furnished more subscribers than the plaintiff. The mere fact that no one contradicted Nelson's testimony does not relieve it from the operation of the rule authorizing the jury to give judgment on its weight and credibility. It is unnecessary to discuss the matter for the authorities are directly in point and conclusive. [Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907; Davidson v. St. Louis Transit Co., 211 Mo. 320, 360, 361, 109 S. W. 583; Bryan v. Wear, 4 Mo. 106.] But as there were several receipts and letters from defendant annexed to Nelson's deposition which tended to prove that he had furnished one hundred and twenty subscriptions within the terms of the contract and remitted for them in due time, it is argued these documents import absolute verity. It is said documentary evidence is to be accepted and declared as a matter of law and the principle precludes the right of the jury to reject it. The rule invoked is without application here for the

case presents no question of interpreting a written document but instead it involves only the matter of establishing an extrinsic or collateral fact by such inferences as are afforded from the letters and receipts. Where the writing put in evidence is not a dispositive instrument, but is merely offered for the purpose of showing an extrinsic fact, it is for the jury to say what inferences of fact it affords, and the court may not declare the result as a matter of law. [1 Thompson on Trials, sec. 1098; Carp v. Queen Ins. Co., 104 Mo. App. 502, 518, 79 S. W. 757; Primm v. Haren, 27 Mo. 205.]

The court declined to permit defendant's treasurer to state that Nelson also claimed the prize. Nelson is not a party to the suit and any statement or claim he may have made touching the matter was not in the presence of the plaintiff. In these circumstances we are persuaded the court did not err in its ruling. Of course, it was competent for defendant to show, under the general denial, as it did, by Nelson's deposition, that he had furnished more subscriptions than plaintiff, for this evidence tended to defeat plaintiff's right of recovery. All of the facts pertinent to this matter were received in evidence, however, and considered by the jury and we are unable to perceive on what theory defendant would be entitled to more, under the issue presented. The mere fact that Nelson made a claim to the prize after the contest was over was certainly not of the *res gestae.* The testimony sought to be elicited from defendant's treasurer as to statements made by Nelson in respect to this matter was properly excluded, for, besides being obnoxious to the rule against hearsay, it amounted to no more than a narrative of a past occurrence. [1 Greenleaf on Evidence, secs. 108, 110.]

The first instruction for plaintiff is as follows:

"The court instructs the jury, that if they believe and find from the evidence, that the defendant on or about November, 1905, published and circulated newspapers called the *Woman's Magazine* and *The Woman's*

*Farm Journal,* and that defendant printed and publish-
ed in said newspapers the printed advertisement read
in evidence, and that thereafter defendant continued to
publish said advertisement in said newspapers, and that
plaintiff before commencing to solicit subscriptions for
the *Woman's National Daily,* mentioned in said adver-
tisement, saw and read said advertisement, and that
plaintiff in reliance on the offers contained therein,
entered upon the work of securing and procuring sub-
scriptions to said *Woman's National Daily* and sending
same to the defendant, and by continuing to secure and
procure and sending to defendant such subscriptions, be-
tween the dates when the contest mentioned in said
advertisement begun and the issuing of the first regular
number of the said *Woman's National Daily,* and that
plaintiff at the time of entering said contest and continu-
ing thereafter until the close of said contest, lived and had
his home upon a farm in Brown county, Illinois, and
outside of any town or city, and that plaintiff sent to
defendant his, plaintiff's, name and complete postoffice
address with his first list of subscribers on the blank
mentioned in said advertisement, and that plaintiff's
residence, during the time said contest ran, was in a
rural district outside of any town or city, and that the
plaintiff, between the time when said contest began
and the issue of the first regular number of said
*Woman's National Daily,* secured and procured and
sent in to defendant a greater number of straight *bona
fide* subscriptions to said *Woman's National Daily* than
any other agent working in class one, in said contest,
*and that plaintiff in all respects fully complied with the
rules governing said contest, as set forth in said adver-
tisement,* and if you find that the defendant subsequent
to the publication of the rules contained in said adver-
tisement, fixed the time in respect to payment of sub-
scriptions by its agents competing in said contest, so as
to authorize its said agents to collect on said subscrip-
tions remaining unpaid, and to remit for same to de-

fendant by depositing said remittances in the United States mail, at any time before midnight of December 15th, 1906, and that plaintiff did pay and remit to defendant before midnight of December 15, 1906, for a greater number of straight, *bona fide* subscriptions to said *Woman's National Daily,* than any other agent working in class one, in said contest, then the jury will find the issues for the plaintiff and against the defendant in the sum of one thousand dollars, together with interest at the rate of six per cent per annum from the 7th day of July, 1908. You are further instructed that by the term 'straight *bona fide* subscription,' as used in this instruction, is meant that each subscription sent to defendant, by its competing agents, including plaintiff, 'must not be a fictitious name, or the name of some person that the agent sends in simply to increase the size of his list, it must be a real subscription.' "

This instruction is criticized for the reason it is said to have submitted the written contract to the jury for construction. The words we have italicized in the instructions are those complained of. It is said, among other things, the jury were required to find "that plaintiff in all respects fully complied with the rules governing said contest as set forth in said advertisement". It is true the instruction is so worded, but we regard the matter as wholly immaterial, for those words are surplusage. Upon carefully scrutinizing the instruction, it appears the jury were pointedly required to find every substantive fact essential to plaintiff's right of recovery and in these circumstances there certainly appears no reversible error. The words italicized may be stricken from the instruction entirely and enough remains to require the jury to find every fact essential to plaintiff's right of recovery. Such fact alone indicates the court did construe the contract and direct the jury with respect to the rights of the parties thereunder. Where an instruction requires a finding on all of the essential facts, the mere superfluous reference to the contract

or the petition is unimportant. [Hartpence v. Rogers, 143 Mo. 623, 45 S. W. 650; Britton v. City of St. Louis, 120 Mo. 437, 25 S. W. 366; Yost v. Silvers, 138 Mo. App. 524, 528, 529, 119 S. W. 971.]

The opinion is already unduly extended. There are other cases to consider and we refrain from further discussion of the points raised. All of those not mentioned in the opinion have been examined and found to be without merit. They are overruled *en masse*. The judgment should be affirmed. It is so ordered. *Reynolds. P. J.,* and *Caulfield, J.,* concur.