LEVERING INVESTMENT COMPANY, a corporation, Appellant, v. BRANSFORD LEWIS, Respondent.

St. Louis Court of Appeals. Argued and Submitted January 7, 1919.
Opinion Filed February 4, 1919.

1. **APPELLATE PRACTICE:** Notice Terminating Tenancy: Instructions: Harmless Error. In an action for rent, where the landlord claimed the lease had been extended, it was not reversible error for the court to have submitted to the jury the question as to whether lessee's letter was a sufficient notice to terminate the tenancy under the facts.

2. **LANDLORD AND TENANT:** Leases: Validity of Renewal Clause: Construction. A clause in a lease providing that, unless the lessee shall give formal written notice to the lessor, at least thirty days prior to the expiration of the lease of his decision, as to reletting or surrender, the lessor may declare the lease renewed, is void, being directly contrary to the provisions of section 7884, Revised Statutes of 1909, which provides that no notice to quit shall be necessary from or to a tenant whose term is to end at a certain time, or when by special agreement notice is dispensed with.

3. ———: ———: ———: ———. A renewal clause in a lease, providing that the tenant must give notice within thirty days before the termination of the lease, or the landlord may declare it renewed for another year, having been inserted by the landlord, and without the tenant's actual knowledge, must be most strictly construed against the landlord, and most favorably for the other party.

4. **CONTRACTS:** Construction. The courts will not give a contract such a construction as will permit one party to secure an unreasonable advantage over another, unless compelled to do so by the language of the contract.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon. Wm. M. Kinsey,* Judge.

AFFIRMED.

*Nagel & Kirby,* and *E. G. Curtis,* for appellant.

(1) The construction of documents or writings in evidence is a question of law, and it is the duty of the

court to construe them and state to the jury their terms and legal effect. 38 Cyc. 1522; Liggett v. Bank, 233 Mo. 529; Milstead v. Equitable Mortgage Co., 49 Mo. App. 191; Mounty, Rec., v. Neighbors Imp. & V. Co., 195 Mo. App. 21. (2) A notice of intent to terminate a tenancy must be clear, unequivocal and unconditional. 1 McAdam on Landlord & Tenant, pp. 593 and 596; Ayers v. Draper, 11 Mo. 548; Columbia Brewing Co. v. Miller, 124 Mo. App. 384; Flannagan v. Lazerine, 175 Mo. App. 188; Baltimore Dental Ass'n v. Fuller, 101 Va. 627.

*Wilbur B. Jones,* and *Frank B. Coleman,* for respondent.

(1) No notice to quit is required from a tenant whose term is to end at a time certain as in this case. Revised Statutes 1909, sec. 7884. (2) The clause embodied in finely printed matter in the lease, and now made the basis of this suit, was inserted by plaintiff as a cunning trap or trick to catch tenants, and is unreasonable, unconscionable and void, and should not be countenanced or sustained by the courts. (3) Even if this court should hold that said clause is not illegal and void, then respondent did give ample notice to the landlord of his intention to terminate the tenancy by the letter of March 20, 1913, and by subsequent letters. The general rule that notice must be free from conditions does not apply in this case, because the lease itself fixes the end of the term, and there was no need of any notice to inform the lessor of the date when the term would end and possession be surrendered. Citizens Bank v. Wertheimer, 189 S. W. 361.

REYNOLDS, P. J.—On January 25, 1915, plaintiff filed its amended petition upon which the case went to trial, to recover a year's rent of certain premises owned by plaintiff and leased to the defendant. It is averred that it is provided in the lease that the defendant should give plaintiff formal written notice at least thirty days before the expiration of the lease, as

to whether or not he would surrender the premises at
the end of the lease, or would exercise an option given
him by the lease to renew it for another term of one
year; that defendant failed to give any notice to plain-
tiff of his intentions; that it was further provided that
unless such notice was given by defendant to plaintiff,
plaintiff had the right to declare the lease renewed
for an additional period of one year; that after de-
fendant's failure to give notice, plaintiff, in accordance
with the provisions of the lease, notified defendant
that it declared the lease renewed for the additional
term of one year, and averring refusal to pay the rent
when due each month, for the months beginning Octo-
ber 1, 1913, to September 1, 1914, a total of $1080,
demand is made for judgment for this, with interest
on each installment of $90 from the first day of
each month on which the installment became due, and
for costs.

The second amended answer to this, after a gen-
eral denial, pleads that the clause set out above and
relied on by plaintiff is unconscionable and not binding
on defendant.

At the trial this answer was amended by inserting a
paragraph immediately following the above, to the
effect that the clause relied on by plaintiff for the ex-
tension and renewals for another year of the term
was always mutually disregarded, waived and held as
naught by both plaintiff and defendant in all their
negotiations, written communications and transactions
in relation to the leased premises, and was not con-
sidered as any part of the contract by either party
until after defendant had given notice that he would
not take a lease on the premises for another year,
whereupon plaintiff, for the first time, called atten-
tion to the clause and claimed rights under it. As a
further defense the second amended answer set up
that from and after about March 1, 1913, the prem-
ises were in an untenantable condition; that defend-
ant notified plaintiff thereof; that plaintiff failed to

repair the same and put the premises in a tenantable condition.

This was replied to by general denial.

The trial before the court and a jury resulted in a verdict for defendant. Plaintiff, filing a motion for new trial and excepting to that being overruled, has duly appealed.

At the trial plaintiff introduced the lease in evidence. This lease bears date September 15, 1912, and by it the plaintiff leases to the defendant certain rooms on the second floor of an apartment building in the city of St. Louis. It is provided that the term shall commence on the 1st day of October, 1912, and end on the 30th day of September, 1913, at a total rental of $1080, payably in monthly installments of $90, on the first day of each month. The conditions are then set out, by the first section, among others, at the end of that first section this:

"And the said lessee hereby expressly agrees to give formal written notice to the said lessor, at least thirty days before the expiration of this lease, of his decision as to the reletting or surrender of the premises hereby leased and in the event the lessee fails to give such notice the lessor may at his option prior to the expiration of this lease declare this lease renewed for a like term under the conditions of this lease, but in the event that he does not so declare, this lease shall terminate, without the approval of the said lessor."

Then follow clauses against the assignment or underletting, without the written consent of the lessor, and the usual terms of house leases, none of which are here involved.

Plaintiff's president, F. Churchill Whittemore, after identifying the lease, testified that he had received no notice from the defendant as to his intention to quit or continue the lease prior to September 1, 1913, and identified a letter mailed by plaintiff to defendant, of date September 17, 1913, in which it is stated that the lease between the parties would have

expired on September 30th, "did we not notify you of the renewal of the lease as provided for in the first section of the lease;" and the letter proceeded: "We, therefore, beg to declare that in accordance with the conditions thereof, the lease. is renewed for a like term, or for one year from October 1, 1913, and to end on the 30th day of September, 1914, at a yearly rental of $1080." The president of plaintiff company also testified that bills for the rent had been sent to defendant every month, none of which had been paid. He further testified that defendant had been a tenant in the premises since 1907; that he had had a lease each year; that the clause in the lease regarding renewal had been in "for a year or two;" that the typewritten words "without the approval of the lessor," were put in at the request of defendant; that he (witness) had had conversations with defendant's wife and with the subtenant under them; that he had no notice that defendant had rented another apartment when he wrote the letter, of September 17, 1913. This witness also identified a letter, of date September 11, 1913, written by an officer of plaintiff, to defendant, and an answer to this letter, of date September 13, 1913, in which defendant acknowledged the receipt of the abovementioned letter of the 11th, and in which letter of September 13th, defendant wrote that upon mature consideration he and his wife had decided not to lease the apartment for the coming year but would give it up on October 1, 1913, and that they did not wish to keep the apartment during October, writing about the disposition of articles in the apartment.

It appears that Mr. Whittemore, president of the plaintiff company, was absent from St. Lous in September, 1913, and had written to his office concerning the negotiations with defendant as to repairs which were to be made in the apartment, and under date of September 11th the office wrote defendant, quoting from this letter, to the effect that plaintiff would do as always about repairs, etc., and adds that as the re-

pairs cannot be made until after October 1, 1913, there will be plenty of time to take these up when Mr. Whittemore returns. It was in answer to this letter of September 11th that defendant wrote the foregoing letter of the 13th.

This witness further testified that on October 3, 1913, the key to the apartment was left in his office by some one representing defendant. When plaintiff refused to receive it, the messenger left them on the counter in the office. Witness further testified that when he knew that defendant was vacating the apartment, or was going to vacate it, he had extensively advertised it for rent, spent money on it in repairs, and did everything possible to obtain a tenant; that he demanded $90 a month rent and had never had an offer of lower rent, and had never had an opportunity to lease the apartment after it was vacated, and during the year from September 13, 1913; that a new sink had been put in the premises in April or May, 1913; that the apartment was re-leased some time in October, 1914, to another tenant, but he (witness) did not know what that tenant was paying; that he was familiar with drawing up contracts and that the foundation of the lease in question was given to him by the attorneys of the Equitable Life Insurance Company, and that the clause about renewal was inserted after talking with a friend in Boston regarding such provisions; that all apartment leases in St. Louis are practically drawn to expire September 30th, of each year. Whereupon plaintiff rested.

The defendant, as witness in his own behalf, testified that he had occupied the apartment in question from September, 1903, until September 30, 1913; had a written lease each year; had never requested the insertion of the typewritten clause in the lease; that was never discussed between him and the plaintiff, and he (defendant) never knew about it until he received the letter of September 17, 1913; that that was the first time his attention was called to it. (What part

of the lease is typewritten, as here referred to, does not appear).

Defendant also introduced and read in evidence, over the objection of plaintiff, a letter of March 20, 1913, written by him to the president of the plaintiff. That letter is as follows:

"I am in receipt of your letter of March 13th. It strikes me that you and I are working at cross-purposes, which bids fair to bring no good to either party. I may say now that I am not ready, six and one-half months in advance of the required time, to negotiate with you about next year's lease, and if you pursue the course of rejecting my reasonable, though comparatively inexpensive, requests, I shall probably not be ready to negotiate with you at any future time on the subject.

"If we move out of this apartment, as you must know, you will not only have to make the repairs that I now request, but others that I am not requesting; you may have the apartment vacant on your hands a number of months, and you may have to accept a less rental for it than I am paying you.

"As I said before, what I wished was, the substitution for the screen door, which you contemplate putting in, the screening of the porch. I doubt if the one would cost much more than the other.

"I should think you could at least make inquiries on the point and learn what the difference in the expense would be. If it is excessive I should probably be willing to help out on this difference, if that be the reason you do not wish to undertake it.

"As a matter of fact, before the porch was built, Mrs. Lewis made the specific request of you that you have it screened, and you replied that that question could be settled at a later date.

"As to the question of the sink, this rightly comes under your own interpretation, of which you said, without urging, you take ample care. It is in a condition entirely out of repair and demands immediate and thorough overhauling.

"The zinc covering is a breeding place for cockroaches, of which we cannot possibly free the apartment while this condition lasts.

"Our maid cuts her hands and tears her clothes on the jagged corners of this sheeting.

"You have replaced such unsanitary sinks with good ones in other apartments, not paying you rental for a number of months, and you should certainly be willing to do the same thing for an apartment for which rental has been paid continually for nine years.

"I wish to say, finally, that if you are not reasonable in these matters, you can look for a new tenant in one apartment next year."

It appears from the evidence in the case that after this letter was written, defendant, acting generally through his wife, had numerous conversations as to the repairs desired, defendant introducing evidence tending to show that the repairs specified in this letter of March 20, 1913, had either never been made at all, or had never been made in a manner satisfactory to defendant to remedy the matters complained of in this letter.

It may be stated here that the court carefully confined the defendant to the testimony as to the repairs and alterations specified in this letter of March 20, 1913, declining to allow evidence as to other defects in the premises claimed by the defendant.

In rebuttal plaintiff introduced evidence tending to show that it had practically made the repairs as requested before the 1st of October, 1913. It also introduced this letter, of date June 10, 1913, written by the president of the plaintiff, Mr. Whittemore. to defendant:

"Dr. Bransford Lewis,
        4396 Lindell Ave.,
              City.
Dear Sir:

Our Mr. Whittemore will go abroad on the 21st of this month and inasmuch as your lease will expire on September 30th, he thought possibly you would like to take up the question of renewing prior to his departure,

as he will not be home until about the first of September.

Yours very truly,

F. CHURCHILL WHITTEMORE.."

While much discussion and correspondence as to repairs took place thereafter between the parties, nothing appears to have been said by either party about a renewal, until plaintiff wrote the letter of September 17, 1913, and that, testified defendant, was the first time his attention was called to the fact that plaintiff claimed that the lease was in force for another term; had never discovered that renewal clause at all.

At the close of the testimony in the case plaintiff asked an instruction to the effect that there is no evidence before the jury tending to show that any clause of the lease in suit was modified or waived and that the defense has not been proven. The court declined to give this, plaintiff excepting.

At the instance of defendant the court gave this instruction to the jury:

"The court instructs the jury that if they believe and find from the evidence that Dr. Lewis, the defendant, signed a lease as lessee with the plaintiff company as lessor for the apartment described in the lease, for a term beginning October 1, 1912, and terminating September 30, 1913, and being the lease read in evidence, and in which lease was a clause or provision relating to a written notice from the lessee to the lessor to be given thirty days prior to the end of the term as to the decision of the lessee regarding the re-letting or surrender of the premises leased; and if the jury believes and finds from the evidence that by writing dated March 20, 1913, and read in evidence, the defendant as lessee notified the plaintiff as lessor of the lessee's decision as to the re-letting or surrender of the premises leased and therein notified the plaintiff, the lessor, that unless the lessor would screen the porch and place the sink in proper condition the lessee would surrender the premises at the end of the term,

September 30, 1913, then the court instructs the jury that if they believe and find from the evidence that the lessor, the plaintiff, did not screen the porch and did not repair and put the sink in the condition specified in said notice, and that the defendant vacated possession of the premises prior to October 1, 1913, and paid in full the rents due for the year beginning October 1, 1912, and ending September 30, 1913, you should find the issues for the defendant.''

Of its own motion the court gave to the jury an instruction that under the pleadings and evidence in the case the jury should return a verdict in favor of plaintiff for the amount of the rental specified in the lease read in evidence, with interest, unless they found in favor of the defendant under the instruction given at the instance of the defendant. This was excepted to by the plaintiff.

Plaintiff asked a number of instructions which the court refused, among them one to the effect that there is no evidence before the jury that the premises in question were in an untenantable condition and that this defense has not been proven. Another, to the effect that a notice of the lessee's decision to surrender the premises leased, in order to be effective under the lease, was required to be unequivocal and unconditional, and that the letter of March 20, 1913, introduced in evidence, is not such a notice and did not constitute a notice of the lessee's decision to surrender; that no notice by the lessee of its decision to surrender having been given by the lessee, their vrdict should be for the plaintiff in the amount directed in other instructions.

It is not material to set out the other instructions asked.

Defendant asked several instructions, which were refused.

The errors assigned by learned counsel for appellant are, first, that the court erred in submitting the question of the legal effect of the letter of March 20, 1913, to the jury; second, that it was error for the court to overrule plaintiff's objection to that letter,

and in overruling plaintiff's objection to evidence as to the subject-matter of that letter; that is to say, the repairs which defendant there demanded or requested; third, error of the court in giving to the jury an instruction that the letter of March 20th might be regarded as a notice under the terms of the lease; fourth, error in refusing to give an instruction at the request of plaintiff that the letter was not a proper legal notice under the lease; and fifth, error in refusing to give the instruction to the jury asked by plaintiff and directing a verdict in its favor.

Learned counsel for the respondent contend that no notice to quit is required from a tenant, whose term is at an end at a time certain, as in the case at bar, and that the clause referred to and on which plaintiff relies, was inserted by plaintiff as a "cunning trap or trick" and is "unreasonable, unconscionable and void;" that even if it should be held that the clause is not illegal and void, respondent did give ample notice to the landlord of his intention to terminate the tenancy by his letter of March 20th, and by subsequent letters, and it being contended, that the general rule, that notice must be free from conditions, does not apply in this case, because the lease itself fixes the end of the term and there was no need of any notice to inform the lessor of the date when the term would end and the possession be surrendered. Further, that the letter of June 10, 1913, from plaintiff's president to defendant acknowledges and concedes that he had been advised and knew that the respondent did not intend to renew the lease. Various other points are made by respondent, which we do not think it necessary to cover.

That it is a general rule that the construction of documents in evidence is a question of law, and that it is the duty of the court to construe them and state to the jury their terms and legal effect, is true. In the case at bar we think that by the principal instruction given at the instance of defendant the court, in effect,

did instruct the jury that the notice contained in the letter of March 20, 1913, and read in evidence, was a notice, in effect, of the decision of the lessee that the premises would be vacated, unless certain repairs were made, and provided the jury found that certain repairs therein demanded were not made, and it submitted to the jury the question as to whether the repairs demanded had been made. This latter was a question of fact for the jury.

In Halbert v. Halbert, 21 Mo. 277, l. c. 284, it is held that the trial court had erred in withdrawing the case from the jury and determining the matter both in law and in fact, because "the terms of the gift was a matter of fact, to be ascertained by the jury, and not a question of law for the judgment of the court." [See, also, Primm v. Haren, 27 Mo. 205, l. c. 210; Huth v. Carondelet Marine Ry. & Dock Co., 56 Mo. 202, l. c. 207; Mantz v. Maguire, 52 Mo. App. 136; Yost v. Silvers, 138 Mo. App. 524, 119 S. W. 971; and Weinstein v. Spalding Cloak Co., 193 S. W. 994, a decision not to be officially reported.]

At all events, we do not think that it was reversible error for the court to have submitted to the jury the question as to whether the letter of March 20, 1913, was a sufficient notice to terminate the tenancy under the facts in this case.

Passing that, however, the clause in controversy is directly contrary to the provisions of section 7884, Revised Statutes 1909. That section provides that no notice to quit shall be necessary from or to a tenant whose term is to end at a certain time, or when by special agreement notice is dispensed with. Here is a lease, the term of which expired at a specified, a certain, time. What is claimed as an agreement is, at best, a one-sided agreement for a renewal. We say "a one-sided agreement," for by this interpolated clause, it is stipulated that if the lessee gave his notice of intention to renew the lease thirty days before the term expired, it was optional on the lessor to renew. For all of the thirty days intervening be-

tween the thirty days and until the end of the term specified in the lease, it was at the option of the lessor to determine whether the lease should be renewed or not, and the defendant could not know whether or not he had a lease. This clause appeared for the first time in this lease. It had not been in any of the former leases, going back to that of 1903. The attention of defendant was never called to it until by letter of September 17, 1913. It was written into this contract by the lessor. Under the well known rule of construction, it is to be construed *contra proferentem,* most strictly against him, and most favorably for the other party. Says Bouvier's Law Dictionary, vol. 1 (Rawle's 3rd Ed.), p. 664, "Construction is against claims or contracts which are in themselves against common right or common law." "The courts will not give a contract such a construction as will permit one party to secure an unreasonable advantage over another, unless compelled to do so by the language of the contract." [Conquerer Zinc & Lead Co. v. Aetna Life Co., 152 Mo. App. 332, l. c. 342, 133 S. W. 156, and authorities there cited.] We do not think that in the case at bar we are compelled to enforce it or to construe this lease so as to make this clause practically override our statute, which, as seen, provides that under such a lease, for a definite term, no notice is necessary.

Our conclusion is that the judgment in this case is for the right party and it should be and is affirmed. *Allen* and *Becker, JJ.,* concur.